IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 17-1736-RGA-SRF |
| v. | ) ) ) | |
| MEDIACOM COMMUNICATIONS CORP., | ) ) ) | |
| Defendant. | ) ) | |
| MEDIACOM COMMUNICATIONS CORP., | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) ) | |
| METASWITCH NETWORKS LTD. and METASWITCH NETWORKS CORP., | ) ) ) | |
| Third-Party Defendants. | ) | |

**REPORT AND RECOMMENDATION**

I.  **INTRODUCTION**

Presently before the court in this patent infringement action is the motion to dismiss Mediacom Communications Corporation's ("Mediacom") third-party complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, filed by third-party defendants Metaswitch Networks Ltd. ("Metaswitch UK") and Metaswitch Networks Corp. ("Metaswitch US") (collectively, "Third-Party Defendants").[1] (D.I. 159) For the following

---

[1] The briefing and related filings associated with the pending motion to dismiss are found at D.I. 160, D.I. 161, D.I. 180, and D.I. 185. Mediacom's answering brief, which is found at D.I. 180,

reasons, I recommend that the Court DENY Metaswitch UK's Rule 12(b)(2) motion to dismiss and GRANT Metaswitch US' Rule 12(b)(6) motion to dismiss.

## II.    BACKGROUND

Defendant and third-party plaintiff Mediacom is a Delaware corporation with a principal place of business in Mediacom Park, New York.  (D.I. 120 at ¶ 1)  Third-party defendant Metaswitch UK is a company incorporated and located in the United Kingdom.  (*Id.* at ¶ 2)  Third-party defendant Metaswitch US, a wholly owned subsidiary of Metaswitch UK, is a Delaware corporation with a principal place of business in Reston, Virginia.  (*Id.* at ¶ 3; D.I. 160, Ex. G at ¶ 3)  Mediacom's third-party complaint alleges that Metaswitch UK has a contract with Delaware resident Mediacom, it owns Delaware-based subsidiary Metaswitch US, and it does business in Delaware.  (D.I. 120 at ¶¶ 5, 10)  The pleading further alleges that Metaswitch UK and Metaswitch US operate as a single entity and share the same corporate offices, website, and certain directors and executive officers.  (*Id.* at ¶ 10)

On January 13, 2010, Mediacom and Metaswitch UK executed a Hardware Purchase and Software License Agreement (the "HPSLA").  (*Id.* at ¶ 9)  Under the terms of the HPSLA, Metaswitch UK agreed to provide hardware and software products to Mediacom, as well as maintenance and support services in connection with those products (the "Metaswitch Products and Services").  (*Id.*)  Mediacom then incorporates the Metaswitch Products and Services into its own products and services (the "Accused Products and Services") to provide its customers with residential and business voice over IP ("VoIP") telephony services.  (*Id.* at ¶ 10)  The third-party complaint alleges that Metaswitch US manufactures and/or provides the Metaswitch

---

fails to comport with D. Del. Local Rule 7.1.3(c)(1)(A) & (B), which requires all opening and answering briefs to include a table of contents and a table of authorities.

Products to Mediacom under the HPSLA and, as a result, Metaswitch US directly benefits from the revenues collected under the HPSLA.  (*Id.*)

Pursuant to the HPSLA's indemnification provision, Metaswitch UK must "indemnify, defend and hold Mediacom . . . harmless from and against any Losses from third party claims" for infringement allegations involving the Metaswitch Products or Services.  (*Id.* at ¶ 11)  However, the indemnification provision also includes an enumerated list of exceptions, in which case Metaswitch UK is not obligated to indemnify Mediacom.  These include: "(i) Mediacom's unauthorized use . . . or modification of the Product . . . .," "(ii) Mediacom's failure to use corrections or enhancements made available by Metaswitch" to avoid the infringement claim, "(iii) the compliance of the Products with standards promulgated by any industry recognized standards-setting organization, where compliance . . . is a commercially necessary aspect of Mediacom's Product implementation and there is no commercially available non-infringing method or manner of complying with such standard(s);" or "(iv) Mediacom's use of the Products in combination with any equipment, software or device not owned or developed by Metaswitch," unless (a) the products or services constitute a "substantial embodiment" of the asserted patent claims, (b) the alleged infringement would not have occurred without the use of Metaswitch's Products or Services with Metaswitch's approval, or (c) "such combination is described in or reasonably contemplated" under the HPSLA.  (*Id.*)  The HPSLA also requires that "the party responsible for indemnification . . . shall have sole control over the defense and any settlement of such Claim."  (D.I. 161, Ex. A at § 12.4)

On December 1, 2017, plaintiff Sprint Communications Company L.P. ("Sprint") filed a complaint against Mediacom, alleging that Mediacom infringed various patents "by making, using, selling, and offering broadband and/or packet-based telephony products or services (the

'Accused Products and Services')." (*Id.* at ¶¶ 14-15)  Sprint amended the complaint on December 15, 2017, alleging infringement of fifteen patents: U.S. Patent Nos. 6,343,084; 6,473,429; 6,298,064; 6,633,561; 6,463,052; 6,452,932; 7,286,561; 6,330,224; 6,697,340; 6,563,918; 7,505,454; 7,327,728; 7,324,534; 7,693,131; and 6,999,463 (collectively, the "Asserted Patents"). (*Id.* at ¶ 14)  Sprint subsequently stipulated to dismiss with prejudice its claims for infringement of U.S. Patent Nos. 7,324,534; 6,999,463; and 7,693,131, and defendant Mediacom Communications Corp. ("Mediacom") agreed to dismiss without prejudice its defenses and claims regarding the dismissed patents. (D.I. 246 at ¶ 2; D.I. 248)

The Accused Products and Services utilized the Metaswitch Products and Services provided by Metaswitch UK pursuant to the HPSLA. (D.I. 120 at ¶ 16)  Accordingly, Mediacom sought indemnification from Metaswitch UK on December 27, 2017 and several times thereafter. (*Id.* at ¶¶ 17-18)  Metaswitch UK responded more than a year later, on March 21, 2019, denying its indemnity obligations under the HPSLA. (*Id.* at ¶¶ 18-20)  Mediacom subsequently filed its third-party complaint on August 21, 2019 against Metaswitch UK and Metaswitch US, alleging causes of action for breach of contract and a declaratory judgment that the Third-Party Defendants have an obligation to defend and indemnify Mediacom for the claims asserted against it in the underlying infringement action. (D.I. 120 at ¶¶ 22-38)

### III.   DISCUSSION

#### A. Personal Jurisdiction Over Metaswitch UK

##### 1.  Legal standard

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2).  When reviewing a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by

a preponderance of the evidence and must do so by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Turner v. Prince George's County Public Schools*, 694 F. App'x 64, 66 (3d Cir. 2017) (internal citations and quotation marks omitted). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). However, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002)).

To establish personal jurisdiction, a plaintiff must demonstrate facts sufficient to satisfy both a statutory and a constitutional requirement. *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). With respect to the statutory analysis, the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the moving defendant in this state comports with the due process clause of the United States Constitution. *See id.*; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (noting that the court must apply the law of the Federal Circuit to the constitutional inquiry in patent cases).

Pursuant to the relevant portions of Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;

      (2) Contracts to supply services or things in this State;
      (3) Causes tortious injury in the State by an act or omission in this State;
      (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 *Del. C.* § 3104(c)(1)-(4). With the exception of subsection (c)(4), the long-arm statute requires a showing of specific jurisdiction. *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 622 (D. Del. 2015); *see Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008). Subsection (c)(4) confers general jurisdiction, which requires a great number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

      If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process by determining whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, a plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

## 2. Analysis

### a. Specific jurisdiction under the Delaware long-arm statute[2]

In support of the motion to dismiss, the Third-Party Defendants argue that the third-party complaint fails to identify acts committed in Delaware by Metaswitch UK which form the basis of Mediacom's HPSLA-based claims. (D.I. 160 at 9) According to the Third-Party Defendants, Mediacom's incorporation in Delaware is not sufficient to establish specific jurisdiction over Metaswitch UK, and there is no evidence that Metaswitch UK "negotiated, executed, or otherwise entered into that HPSLA in Delaware, denied indemnification under the HPSLA in Delaware, or otherwise sold, installed or maintained the equipment at issue in Delaware." (*Id.* at 10)

In response, Mediacom contends that specific personal jurisdiction over Metaswitch UK exists under subsections (c)(1) and (c)(2) of the Delaware long-arm statute. (D.I. 180 at 4-7) Mediacom argues that Metaswitch UK contracted with Mediacom, a Delaware company, to supply products and services under the HPSLA in the United States market, which includes Delaware. (*Id.* at 5) Mediacom alleges that Metaswitch UK was contractually obligated to indemnify and defend Mediacom in Delaware under the terms of the HPSLA, and it breached the HPSLA by refusing to do so. (*Id.* at 6) In a footnote, Mediacom also argues that the court may exercise specific jurisdiction over Metaswitch UK based on its agency relationship with Metaswitch US. (*Id.* at 6 n.3)

Mediacom's third-party complaint does not support the court's exercise of specific jurisdiction over Metaswitch UK under subsection (c)(1) of the Delaware long-arm statute,

---

[2] Mediacom does not dispute the Third-Party Defendants' assertion that the court does not have general jurisdiction over the Third-Party Defendants under subsection (c)(4) of the Delaware long-arm statute.

7

which provides that specific jurisdiction exists over an entity that "[t]ransacts any business or performs any character of work or service in the State." 10 *Del. C.* § 3104(c)(1). A court may exercise specific jurisdiction over a parent corporation under subsection (c)(1) based on the actions of its subsidiary, so long as: (1) an agency relationship exists between the parent and the subsidiary; (2) the subsidiary's actions occur in Delaware; and (3) the subsidiary's Delaware actions form the basis for the cause of action. *See Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 386 (D. Del. 2009) (explaining that subsection (c)(1) confers jurisdiction over a nonresident who transacts business in Delaware through an agent acting on its behalf, so long as "some act on the part of the defendant occur[s] in Delaware and . . . the plaintiff's claims arise out of that act."). Assuming *arguendo* an agency relationship exists between Metaswitch UK and Metaswitch US stemming from the transaction giving rise to Mediacom's claim,[3] the pleading in the instant case does not describe any business activity by Metaswitch US occurring in Delaware, and business activities directed to the United States generally are not sufficient to establish specific jurisdiction in Delaware. *See Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 457 (D. Del. 2009) (finding no specific jurisdiction in the absence of competent evidence of any product entering the Delaware market).

  Mediacom has presented no affidavits, declarations, or documentary evidence showing that Metaswitch US directed its business activities to Delaware. *Cf. Enzo Life Scis., Inc. v. Hologic Inc.*, C.A. No. 16-894-LPS-CJB, 2018 WL 4660355, at *2 (D. Del. Sept. 26, 2018) (evaluating declarations and documentary evidence in support of an exercise of specific jurisdiction over the defendant). Instead, the record before the court supports the Third-Party

---

[3] The court's analysis of the alleged agency relationship between Metaswitch UK and Metaswitch US is found at § IV.B.2, *infra*.

Defendants' position that no Metaswitch equipment was used in or delivered to Delaware. (D.I. 160, Ex. E at ¶¶ 3-4) This is consistent with a professional service proposal drafted by a Metaswitch entity for Mediacom that identifies Mediacom voice equipment sites located in New York, Georgia, Iowa, Missouri, and Alabama, but not in Delaware. (D.I. 161, Ex. B at 4) The HPSLA is also devoid of any references to Delaware specifically, (*id.*, Ex. A), and Mediacom's incorporation in Delaware is not sufficient to establish specific jurisdiction under subsection (c)(1) of the Delaware long-arm statute, *see Seiden for S. China Livestock, Inc. v. Schwartz, Levitsky, & Feldman LLP*, C.A. No. 17-1869-MN, 2018 WL 5818540, at *5 (D. Del. Nov. 7, 2018).

However, Mediacom's third-party complaint adequately supports the court's exercise of specific jurisdiction over Metaswitch UK under subsection (c)(2) of the Delaware long-arm statute, which provides that the court may exercise specific jurisdiction over an entity that "[c]ontracts to supply services or things in this State." 10 *Del. C.* § 3104(c)(2). Metaswitch UK is contractually obligated to defend and indemnify Mediacom against any infringement actions brought against Mediacom involving the products or services provided by Metaswitch UK under the HPSLA. (D.I. 120 at ¶ 11) In this regard, Sprint's patent infringement suit against Mediacom in Delaware triggers Metaswitch UK's obligations to defend Mediacom under the HPSLA, and performance of that obligation can only be performed in Delaware, where the infringement action is pending. *See Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F. Supp. 1213, 1218 (S.D.N.Y. 1986) ("The duty to defend is broader than the duty to indemnify. The two obligations are separate and distinct." (internal citations and quotation marks omitted)); *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 510 (S.D.N.Y. 2018) ("[T]he insurer's duty to furnish a defense generally is triggered by the filing of a lawsuit,

whereas the duty to indemnify generally is triggered by a determination of liability." (internal citations and quotation marks omitted)).[4]  Because the duty to defend can only be performed in Delaware in this instance, Metaswitch UK is obligated to perform in Delaware, subjecting it to personal jurisdiction under subsection (c)(2) of the Delaware long-arm statute.

Although the HPSLA's indemnification provision does not specifically state that Metaswitch UK will indemnify Mediacom in Delaware, litigation against Mediacom in Delaware was reasonably foreseeable due to Mediacom's incorporation in Delaware.  *See Allen Organ Co. v. Elka S.p.A.*, 615 F. Supp. 328, 330 (E.D. Pa. 1985) ("[I]n a patent indemnification agreement with America, Inc., ELKA specifically bound itself to defend and indemnify Kimball in infringement actions brought in the United States. Thus, ELKA must certainly expect to be sued, pursuant to its contract, wherever personal jurisdiction may be obtained over Kimball.").  Because "the claim sought to be asserted arose from the performance of business or the discharge of the contract, no further inquiry is required concerning any other indicia of the defendant's activity in this state."  *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986).

Metaswitch UK further argues that the scope of the indemnification provision should be resolved after a ruling on the merits in the underlying patent infringement action and, until then, "due process weighs against unnecessarily subjecting Metaswitch UK to this Court's jurisdiction."  (D.I. 185 at 8)  The duty to indemnify Mediacom does not arise unless and until a determination of liability for infringement is reached.  *See Stoncor*, 322 F. Supp. 3d at 510

---

[4] The HPSLA contains a New York choice of law provision governing all disputes arising from the HPSLA.  (D.I. 161, Ex. A at § 26.1)  The construction of the indemnification provision at Section 12 of the HPSLA is for purposes of the court's jurisdictional analysis only.  No findings are made with respect to each party's rights or obligations under Section 12 of the HPSLA.

("[T]he duty to indemnify turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts."). Nonetheless, the court need not apply the forum selection clause if doing so would be unreasonable or impractical under the circumstances. *See RGC Int'l Inv'rs, LDC v. ARI Network Servs., Inc.*, C.A. No. 03-003-SLR, 2003 WL 21843637, at *2 (D. Del. July 31, 2003) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). The facts necessary to construe Section 12 of the HPSLA are inter-related to the factual disputes in the underlying infringement suit. (D.I. 120 at ¶ 8) As a practical matter, therefore, the breach of contract claims for the duties to defend and indemnify should be addressed in the same proceeding giving rise to the claims. Accordingly, this court may apply New York law to interpret and construe Section 12 of the HPSLA.

### b. Due Process

Next, the Third-Party Defendants contend that Mediacom cannot satisfy the Due Process requirement because Mediacom's cause of action does not arise from Metaswitch UK's activities in Delaware. (D.I. 160 at 14-15) The Third-Party Defendants argue that the existence of an indemnification clause is not enough to subject the indemnitor to specific jurisdiction in Delaware. (D.I. 185 at 6)

In response, Mediacom contends that Metaswitch UK contractually agreed to indemnify and defend Mediacom in infringement actions, and the duty to indemnify provides a reasonable basis to establish personal jurisdiction over a defendant. (D.I. 180 at 8) According to Mediacom, Metaswitch UK's continuing obligations under the HPSLA strengthen its contacts in Delaware, and it was foreseeable at the time the HPSLA was executed that Mediacom would be sued for infringement in its state of incorporation. (*Id.* at 8-9)

11

For the reasons stated in connection with the application of the Delaware long-arm statute, the exercise of specific jurisdiction over Metaswitch UK is consistent with the Due Process Clause. By contracting with Mediacom, a Delaware corporation, to indemnify the company for infringement claims involving its products, Metaswitch UK "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). Mediacom's cause of action arises from Metaswitch UK's contractual obligation to indemnify the Delaware corporation in infringement actions involving Metaswitch components. Consequently, Metaswitch UK could reasonably foresee being haled into court in Delaware. *See Enzo Life Scis., Inc. v. Hologic Inc.*, C.A. No. 16-894-LPS-CJB, 2018 WL 4660355, at *5 & n.8 (D. Del. Sept. 26, 2018) (finding that GSA's indemnification agreement to participate in defense of Enzo's infringement claims amounted to purposeful availment of the privilege of conducting activities within Delaware).

### B. Failure to State a Claim Against Metaswitch US

#### 1. Legal standard

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### 2. Analysis

The Third-Party Defendants contend that Mediacom's cause of action for breach of contract must be dismissed as to Metaswitch US because Mediacom does not allege that Metaswitch US breached the HPSLA, and Metaswitch US is not a party to the HPSLA. (D.I. 160 at 17) According to the Third-Party Defendants, Mediacom's alter ego theory fails because allegations of ownership, financial control, overlapping management, and coordinated business efforts are not sufficient as a matter of law to plead corporate veil-piercing. (D.I. 160 at 18-19)

In response, Mediacom argues that the agency allegations in the third-party complaint are sufficient to state a breach of contract claim against Metaswitch US under the HPSLA because

Metaswitch UK and Metaswitch US operate as a single entity and share the same corporate offices, the same website, and certain directors and executive officers. (D.I. 180 at 12-13) Mediacom alleges that the Third-Party Defendants have not specified which entity provides or delivers hardware, software, and/or services under the HPSLA. (*Id.*)

      I recommend that the court grant the Third-Party Defendants' motion to dismiss Mediacom's breach of contract claim as to Metaswitch US. Although Mediacom contends that Metaswitch US is liable for breach of contract under an agency theory, the pleading articulates an alter ego theory: "Metaswitch [UK] and Metaswitch [US] operate together as a single entity. . . ." (D.I. 120 at ¶ 10; *see also id.* at ¶ 31) "[T]o succeed on an alter-ego theory of liability, a plaintiff must establish that in all aspects of the business, the corporate entities 'actually functioned as a single entity and should be treated as such.'" *Int'l Bus. Machines Corp. v. Expedia, Inc.*, C.A. No. 17-1875-LPS-CJB, 2019 WL 3322542, at *3 (D. Del. July 24, 2019) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)). Mediacom pursues only an agency theory, as opposed to an alter ego theory, and a review of the pleading confirms that it does not "allege facts supporting the fraud or injustice requirement for alter ego liability." *StrikeForce Techs., Inc. v. Phonefactor, Inc.*, No. 13–490–RGA–MPT, 2013 WL 6002850, at *4–5 (D. Del. Nov. 13, 2013). Therefore, the pleading fails to state a claim for breach of contract against Metaswitch US under the alter ego theory.

      Mediacom's agency theory fails because Mediacom seeks to impose liability on the alleged subsidiary, Metaswitch US, for the alleged breach of the HPSLA by the parent, Metaswitch UK. The law is well-established that, "[u]nder an agency theory, a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions." *See T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT,

14

2017 WL 896988, at *6 (D. Del. Mar. 7, 2017). "Stated another way, when a subsidiary acts as the agent of the parent corporation, the parent corporation may be liable for actions conducted by the agent." *British Telecomm'cns PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019). Mediacom cites no authority suggesting that an agent may be held liable for the actions of its parent.

Mediacom's pleading also lacks sufficient allegations to give rise to a reasonable inference of an agency relationship. Under an agency theory of liability, the actions of a subsidiary are attributable to the parent when the parent authorizes the actions of the subsidiary. *See Kenexa Brassring, Inc. v. Akken, Inc.*, C.A. No. 12-660-SLR, 2013 WL 3229741, at *3 (D. Del. June 25, 2013). Factors such as shared operating activities, shared management, a shared office, and control of business activities and funding by a managing member are indicative of an agency relationship. *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008). In accordance with these considerations, the third-party complaint alleges that "Metaswitch [UK] and Metaswitch [US] . . . share the same corporate offices, the same corporate websites, and certain directors and executive officers of Metaswitch [UK] likewise serve as directors and executive officers of Metaswitch [US]." (D.I. 120 at ¶ 10)

But to constitute an agency relationship, the arrangement between the parent and the subsidiary must also be directly related to the underlying cause of action. *See T-Jat Sys.*, 2017 WL 896988, at *6. Here, the underlying cause of action for breach of contract is based on the "fail[ure] to indemnify, defend and hold Mediacom harmless from and against any Losses . . . in the Lawsuit up to the liability cap. . . ." (D.I. 120 at ¶ 26) Mediacom's third-party complaint does not allege that Metaswitch UK directed Metaswitch US not to indemnify or defend

Mediacom in the patent infringement litigation. Instead, the pleading alleges that "Metaswitch [US] provides and/or manufactures, or has provided and/or has manufactured, the Products provided to Mediacom under the HPSLA." (D.I. 120 at ¶ 10) The products and services provided by Metaswitch US, presumably at Metaswitch UK's direction, are tangential to Metaswitch UK's refusal to indemnify and defend Mediacom against Sprint. The pleaded allegations do not indicate that Metaswitch UK directed Metaswitch US to play any role in the decision not to indemnify or defend Mediacom in the infringement litigation brought by Sprint. *See Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 384 (D. Del. 2009) ("When applying an agency theory, a court focuses on the arrangement between the entities, the authority given in that arrangement and the relevancy of that arrangement to the plaintiff's claim."). Because the actions of Metaswitch US are not directly related to the underlying cause of action for breach of the indemnification provision of the HPSLA, the pleading fails to adequately establish that Metaswitch US should be subject to the breach of contract claim under an agency theory of liability.

### C. Jurisdictional Discovery

Having recommended that the court exercise specific jurisdiction over Metaswitch UK, Mediacom's request for jurisdictional discovery is moot.

### IV. CONCLUSION

For the foregoing reasons, I recommend that the court DENY the Third-Party Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, and GRANT the Third-Party Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. (D.I. 159)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In

the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **May 14, 2020**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 6, 2020

Sherry R. Fallon
United States Magistrate Judge