# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P.,<br>*Plaintiff,*<br><br>v.<br><br>MEDIACOM COMMUNICATIONS CORP.,<br>*Defendant.* | **REDACTED PUBLIC VERSION**<br><br>Case No. 17-1736-RGA |
| SPRINT COMMUNICATIONS COMPANY L.P.,<br>*Plaintiff,*<br><br>v.<br><br>WIDEOPENWEST, INC., *et al.,*<br>*Defendants.* | Case No. 18-361-RGA |
| SPRINT COMMUNICATIONS COMPANY L.P.,<br>*Plaintiff,*<br><br>v.<br><br>ATLANTIC BROADBAND FINANCE, LLC, et al.,<br>*Defendants.* | Case No. 18-362-RGA |
| SPRINT COMMUNICATIONS COMPANY L.P.,<br>*Plaintiff,*<br><br>v.<br><br>GRANDE COMMUNICATIONS NETWORKS, LLC, et al.,<br>*Defendants.* | Case No. 18-363-RGA |

## DEFENDANTS' RESPONSE TO SPRINT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MR. BAKEWELL[1]

---

[1] This Response is filed by Defendants in the above-captioned cases: "Mediacom" (Mediacom Communications Corp.); "WOW" (WideOpenWest, Inc., WideOpenWest Networks, Inc., WideOpenWest Networks Finance, LLC, WideOpenWest Georgia, LLC, Knology of Alabama, Inc., Knology of Florida, LLC, Knology of Georgia, Inc., Knology of South Carolina, Inc., Knology of Tennessee, Inc., Knology of Kansas, Inc., and Anne Arudel Broadband, LLC); "Grande" (Grande Networks, LLC); "RCN" (RCN Telecom Services, LLC); "Wave" (Wavedivision Holdings, LLC); and "Atlantic Broadband" (Atlantic Broadband Finance, LLC; Atlantic Broadband (CT), LLC; Atlantic Broadband (Delmar), LLC; Atlantic Broadband (Miami), LLC; Atlantic Broadband (NH-ME), LLC; Atlantic Broadband (Penn), LLC; and Atlantic Broadband (SC), LLC).

ASHBY & GEDDES
Steven J. Balick (2114)
Andrew C. Mayo (5207)
500 Delaware Ave, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
SBalick@ashbygeddes.com
AMayo@ashbygeddes.com

*Of Counsel*:

Robinson Vu
Natalie Alfaro Gonzales
Lindsay Volpenhein Cutié
Amy E. Bergeron
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1234

*Attorneys for Defendants*

Timothy S. Durst
BAKER BOTTS L.L.P.
2001 Ross Avenue, Ste. 900
Dallas, Texas 75201-2980
(214) 953-6500

Dated:  June 30, 2020

## TABLE OF CONTENTS

Page

I.    Nature and Stage of the Proceedings ................................................................ 1

II.   Introduction and Summary of the Arguments................................................. 1

III.  Factual Background................................................................................................ 2

      A.    Mr. Bakewell's Royalty Rate is Based on Quantitative and Qualitative
            Analyses ...................................................................................................... 2

      B.    Sprint's Competitors for the Provision of Wholesale VoIP Services ..................... 5

      C.    Other VoIP Technology ........................................................................................ 6

      D.    Defendants' Licensing Agreements ...................................................................... 6

IV.   Argument ................................................................................................................ 7

      A.    Mr. Bakewell relies on relevant facts and applies sound methodology to reach
            his reasonable royalty opinion ............................................................................. 7

            i.    Mr. Bakewell is not required to calculate his reasonable royalty with a
                  mathematical formula ................................................................................. 7

            ii.   Sprint relies on case law that does not support exclusion of Mr.
                  Bakewell's testimony ............................................................................... 10

      B.    Mr. Bakewell's opinions regarding the competitive landscape for Sprint's lost
            profits damages properly rely on analysis by Mr. Gilchrist and the facts of the
            case .................................................................................................................. 12

      C.    Mr. Bakewell properly relies on analysis by Mr. Gilchrist and the facts of the
            case regarding apportionment of VoIP technologies ........................................... 15

      D.    Mr. Bakewell properly considers Defendants' agreements .................................. 16

V.    Conclusion ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barry v. Medtronic, Inc.*,
    No. 1:14-cv-104, 2016 WL 7665423 (E.D. Tex. July 19, 2016) ....................................6, 8

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*,
    No 12-cv—0205-RGA, 2015 WL 4730899 (D. Del. Aug. 10, 2015) ...........................6, 8

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group, LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ...................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ......................................................................................10

*LG Display Co., Ltd. v. AU Optronics Corp.*,
    722 F. Supp. 2d 466 (D. Del. 2010) ..........................................................................16

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................7

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017) .................................................................................12

*SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*,
    926 F.2d 1161 (Fed. Cir. 1991) ...........................................................................12, 13

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) ...................................................................................7

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995) .......................................................................................7

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) .........................................................................7, 11, 12

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Defendants Mediacom, WOW, Grande, RCN, Wave, and Atlantic Broadband (collectively "Defendants") retained Mr. Christopher Bakewell as their damages expert in the above-captioned lawsuits.  Sprint moves to exclude certain opinions of Mr. Bakewell.  As Mr. Bakewell's analysis is consistent throughout the rebuttal reports he submitted in all four cases, Defendants' arguments presented here apply to each of the above-captioned cases.

## II.    INTRODUCTION AND SUMMARY OF THE ARGUMENTS

Mr. Bakewell's opinions are the product of reliable methodology based on relevant facts. Sprint's Motion is based on faulty premises that overlook or misrepresent Mr. Bakewell's well-documented analysis.  While Sprint might disagree with Mr. Bakewell's conclusions, Sprint fails to identify any flaw in Mr. Bakewell's methodology in calculating his baseline royalty rates, or in Mr. Gilchrist's technical opinions that underlie Mr. Bakewell's analysis.  Mr. Bakewell's opinions are admissible.  Sprint's motion should be denied.

1.  Mr. Bakewell performs multiple quantitative economic analyses to determine baseline royalties for the patents-in-suit, then refines those baseline royalties using the *Georgia-Pacific* factors to arrive at his reasonable royalty opinion.  His report documents the factual and analytical bases for his methodology.  Sprint contends that Mr. Bakewell's reasonable royalty amount is "plucked out of nowhere," but such argument is disproven by the robust analytical underpinnings and methodology documented in the report.

2.  Sprint misses the mark with its assertion that Mr. Bakewell simply "assumes" Sprint's competitors are non-infringing alternatives, as Mr. Bakewell identifies the evidentiary sources and technical opinions used to analyze the competitive options in rebutting Sprint's lost profits claim that Defendants had no choice but to purchase Sprint's VoIP services.

1

3.  Mr. Bakewell  relied on Mr. Gilchrist's technical analysis to evaluate the universe of technologies needed for the provisions of VoIP.  Mr. Bakewell also properly analyzed Defendants' license agreements, determining they were not technically comparable, but noting Defendants' preference for lump sum payments.  Sprint's claims that Mr. Bakewell's opinions regarding other VoIP technologies and Defendants' agreements are based only on his "say-so" ignore Mr. Bakewell's well-documented analysis.

## III.   FACTUAL BACKGROUND

### A.   Mr. Bakewell's Royalty Rate is Based on Quantitative and Qualitative Analyses

Mr. Bakewell bases his reasonable royalty opinion on well-accepted economic analyses. He first performs a quantitative analysis using the widely accepted income, market and cost valuation approaches, to derive a baseline royalty range for the patents-in-suit.[2]  Ex. 1, Atlantic Broadband Rebuttal Report ("ABB"), ¶210.  Mr. Bakewell then analyzes each of the fifteen *Georgia-Pacific* factors to "verify and refine" the baseline, ensuring they are reasonable in light of the facts.  ABB, ¶211.  At each step, he carefully documents the evidence and describes the quantitative and qualitative analysis leading to his conclusion.

First, using the income approach, Mr. Bakewell evaluates the incremental value of the patents-in-suit by examining their contribution relative to the entirety of technologies comprising VoIP networks and services. ABB, ¶227.  To do so, he relies on Mr. Gilchrist, Defendants'

---

[2] In the body of this brief, Defendants have provided citations to Mr. Bakewell's Atlantic Broadband Rebuttal Report to be consistent with the approach in Sprint's Motion.  Mr. Bakewell's Rebuttal Reports in the other three cases contain the same thorough analysis.  *See* Ex. 2, Mediacom Rebuttal Report ("Mediacom"); Ex. 3, RCN Rebuttal Report ("RCN"); and Ex. 4, WideOpenWest Rebuttal Report ("WOW"). Parallel citations to Mr. Bakewell's other reports are shown in Appendix A, attached hereto.

technical expert, to identify ████████████████████████████ as the equipment that incorporates the allegedly infringing technology.[3]  *Id*.  Mr. Bakewell also uses the industry white papers and articles that Sprint's expert, Dr. Mangum, relied on to assess what percentage of VoIP's overall value derives from that specific equipment.  ABB, ¶¶227-230.  He calculates that the ████ ████████████████████████ equipment represent between ██████ of VoIP's value.  ABB, ¶¶229-231.  Applying this range to Dr. Magnum's royalty rate of ████ per subscriber per month ("PSPM") (which is based on the value of VoIP as a whole without apportioning), Mr. Bakewell calculates a royalty rate for the patents-in-suit ranging from approximately ████ to ████ PSPM.  ABB, ¶231, n.506.

Second, using the market approach, Mr. Bakewell analyzes several Sprint and Defendant patent agreements.  ABB, ¶¶240-385, Exhibit 11.  He discusses whether the specific agreements encompassed patents that were technically comparable to the patents-in-suit (relying on Mr. Gilchrist and other specifically-cited evidence); he assessed the extent to which each agreement informs a reasonable royalty for the patents-in-suit.  *Id*.  For each Sprint agreement containing the patents-in-suit, Mr. Bakewell provided an apportionment calculation to identify an implied royalty for the patents-in-suit, separate from the total value of the entire licensed portfolio ████████ ████████████████████████.  ABB, ¶242, Exhibit 10.  Exhibits 3 to 6 document the calculations of the implied royalty for each agreement, with footnotes to the evidentiary source for each input; Exhibit 2 summarizes the results.  Based on these market approach calculations, Mr. Bakewell concluded the Sprint agreements support a royalty rate for the patents-in-suit ranging from ████ to ████ PSPM.  ABB, Exhibit 2.

---

[3] Sprint does not seek to exclude Mr. Gilchrist's opinion that ████████████████████████ ████████ are the allegedly infringing technology.

Third, using the cost approach, Mr. Bakewell evaluates the economic effects of multiple non-infringing alternatives on the value of the patents-in-suit.  Mr. Bakewell notes that this approach examines the economic justification for a royalty and "does not yield specific data points in this case"; instead, it provides "qualitative considerations" that contextualize the reasonable royalty. ABB, ¶388.  In analyzing non-infringing alternatives, Mr. Bakewell relies on multiple documented sources, including Defendants' technical expert's analysis, evidence of the wholesale VoIP market, and Dr. Mangum's acknowledgement that ███████████ is a non-infringing alternative to the patents-in-suit.  ABB, ¶¶391-95.

Fourth, using the fifteen *Georgia-Pacific* factors, Mr. Bakewell verifies and refines the baseline royalties.  ABB, ¶¶411-470.  In an exhaustive analysis over nearly sixty pages of his report, Mr. Bakewell analyzes relevant evidence and specifies the effect of each factor.  *Id.*  In addition to relying on Defendants' technical expert, Mr. Bakewell cites directly to the record and extensive documented sources.  *See, e.g.* ABB, n.854 (citing deposition testimony); n.863 (citing discovery responses); n.873 (quoting Sprint's damages expert in previous litigation); Ex. 2, Bakewell Mediacom Rebuttal Report ("Mediacom"), n.858 (citing agreements in the record).  He concludes that two factors suggest a downward influence and the remainder are neutral; thus, the *Georgia-Pacific* analysis confirms the reasonableness of the baseline royalties.  ABB, ¶476.

Ultimately, Mr. Bakewell concludes that the collective financial and economic evidence demonstrates the reasonable royalty is no more than ███ PSPM for the Christie Patents and ███ PSPM for the Enhanced Services Patents. ABB, ¶15.[4]  The combined reasonable royalty rate of ███ PSPM for all patents-in-suit falls within the baseline range of ███ to ███ PSPM derived

---

[4] Exhibit 1 of Mr. Bakewell's reports provides the calculations applying the reasonable royalty, with the Christie Patents accruing royalties through their May 5, 2014 expiration and the Enhanced Services Patents continuing to accrue royalties through November 22, 2016.

from his analysis of the multiple valuation approaches, which are based on the evidence (with sources and calculations in Exhibits 2 through 5) and summarized in Exhibit 1. The allocation of the royalty rate between the two patent groups is based on evidence that when Sprint conveyed rights to the patents-in-suit, the royalty term ceased when the Christie Patents expired, even though the Enhanced Services Patents expired later (indicating Sprint itself assigned a relatively nominal (or no) value to the Enhanced Services Patents). Mediacom, ¶¶406-7. Further, the voicemail feature accused of infringing the Enhanced Services Patents was free for Defendants' customers, and was rarely used (for example, by as few as          of Mediacom's customers). *Id.* Thus Mr. Bakewell concludes that a reasonable royalty for the Enhanced Services Patents would be at most relatively nominal (as did Dr. Mangum), and no more than          PSPM. *Id.*

### B. Sprint's Competitors for the Provision of Wholesale VoIP Services

There is no dispute that Sprint competed with other wholesale VoIP service providers during the relevant damages period. ABB, ¶171. Mr. Bakewell identifies these third-party wholesale VoIP service providers and notes Sprint's pre-suit representations to Defendants that



. ABB, ¶¶171-172.

In addition, Mr. Bakewell relies on Mr. Gilchrist's analysis of the third-party VoIP service providers as alternatives. ABB, ¶¶169-170. Mr. Gilchrist analyzes the offerings of several Sprint competitors and concludes that                              were also providing wholesale VoIP service. Ex. 5, Gilchrist Non-Infringement Report ("Gilchrist"), ¶962. Mr. Gilchrist opines that competing VoIP wholesale services provided by          do not infringe the asserted patents, Gilchrist, ¶984, and states that he is not aware of any evidence that the competing services provided by                    infringe either. Gilchrist, ¶963. Mr. Gilchrist determines that these competitors were acceptable non-infringing alternatives in part

because they could have provided direct IP-to-IP connections, which undisputedly do not infringe the patents-in-suit. Gilchrist, ¶964.

### C.   Other VoIP Technology

Mr. Bakewell also relies on Mr. Gilchrist's opinions that . Sprint's own experts also acknowledge these points. Mr. Gilchrist looks at multiple records to identify technologies that are required to provide VoIP and have nothing to do with the patents-in-suit.[5] Gilchrist, ¶1000. Mr. Gilchrist's analysis relies in part on white papers and presentations cited by Sprint's Dr. Mangum. Gilchrist, ¶¶1000, 1002. In addition, Mr. Gilchrist identifies the as the equipment implicated in Sprint's infringement allegations. Gilchrist, ¶¶991-999, 1002. Consistent with Mr. Gilchrist's opinions, Mr. Bakewell identifies other Sprint patents and third-party patents in the VoIP space, along with other technologies necessary to provide VoIP service, which must be excluded to isolate the value of the patents-in-suit. ABB, ¶¶220-231.

### D.   Defendants' Licensing Agreements

Mr. Bakewell did not rely on Defendants' agreements to calculate a reasonable royalty rate. He observes, however, that all of them are structured as lump-sum payments, and concludes that is Defendants' preference. ABB, ¶386. Sprint has no evidence to the contrary.

---

[5] Mr. Gilchrist's analysis and opinions, and the facts upon which he relied are readily available for review in his non-infringement report and were probed by Sprint during his deposition. Sprint has not sought to exclude any of Mr. Gilchrist's opinions.

## IV.   ARGUMENT

### A.   Mr. Bakewell relies on relevant facts and applies sound methodology to reach his reasonable royalty opinion

Contrary to Sprint's contention that Mr. Bakewell's reasonable royalty for the patents-in-suit is "plucked out of nowhere," Mr. Bakewell's opinions are the product of rigorous analysis grounded in the facts of the case and well-accepted methodologies.  As explained above, Mr. Bakewell indisputably performs a quantitative analysis to derive baseline royalties for the patents-in-suit and further refines the baseline through qualitative analysis to arrive at his reasonable royalty.  Sprint's attempt to disregard Mr. Bakewell's calculations and methodology by mischaracterizing his report is not a basis to exclude his opinion.

#### i.   Mr. Bakewell is not required to calculate his reasonable royalty with a mathematical formula

Mr. Bakewell's ultimate reasonable royalty is properly based on the calculated baseline royalty range and his analysis of the *Georgia-Pacific* factors' effect on the baseline.  Sprint complains that Mr. Bakewell's reasonable royalty of          PSPM is not equal to any one of the data points comprising the baseline royalty range, nor is it the average of all the data points.  Motion at 6.  But it is a step too far for Sprint to ask the Court to exclude Mr. Bakewell's reasonable royalty opinion because Sprint would prefer that he provide an "average" or myopically rely on one specific data point in converting the baseline royalties to his reasonable royalty conclusion of          PSPM royalty for the Christie Patents and          PSPM for the Enhanced Services Patents.  As courts have observed, while some of Mr. Bakewell's adjustments might not be "as quantitative as [plaintiff] would like, . . . courts do not require an expert to provide a 'mathematical formula' in calculating a reasonable royalty rate."  *Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2016 WL 7665423, at *3 (E.D. Tex. July 19, 2016); *see also Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No 12-cv—0205-RGA, 2015 WL 4730899, at *7 (D. Del. Aug. 10, 2015) ("Defendants

are correct that [plaintiff's expert] did not offer a mathematical formula for her result. . . . That does not mean that her opinion was not based on a sound methodology. . . . The lack of a mathematical formula, when there is other analysis, cannot, alone, be grounds for excluding [her] methodology.").

Indeed, the law on damages calculation for patent infringement has long acknowledged that the reasonable royalty analysis "necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.,* 69 F.3d 512, 517 (Fed. Cir. 1995)); *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) (courts must "keep[] in mind that a reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'"). In fact, the Federal Circuit has recognized that "estimating a reasonable royalty is not an exact science [as] [t]he record may support a range of reasonable royalties, rather than a single value." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Where the damages expert has performed a sound economic analysis tied to the facts of the case, as Mr. Bakewell has done here, no more is required. *Id.* ("[W]here the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role [] is satisfied, and the inquiry on the correctness of the methodology and [] results produced thereunder belongs to the [jury].").

Tellingly, Sprint does not dispute the relevance of the facts that underlie Mr. Bakewell's baseline royalty range. Sprint also does not challenge his calculations of the baseline royalty range. Like any valuation effort, Mr. Bakewell's analysis required him to make an informed approximation based on the significant amount of data that he analyzed to arrive at his ultimate

reasonable royalty opinion.  By no stretch are Mr. Bakewell's royalty rates "plucked out of nowhere," as Sprint claims.

The Court has admitted a similar opinion in the past.  In *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, the Court rejected Sprint's argument that the damages expert's analysis was a "black box" and that she provided "no explanation" for how she reached her figures. *Comcast IP*, 2015 WL 4730899 at *6.  The expert compared a patent purchase transaction by plaintiff to the hypothetical negotiation and adjusted the purchase price to account for uncertainty. *Id*.  She then adjusted her figure using the *Georgia-Pacific* factors.  *Id*.  The Court acknowledged that although the opinion was not derived with a mathematical formula, the lack of such formula "does not mean that her opinion was not based on a sound methodology."  *Id*. at *7.  As the Court explained, "[t]he lack of a mathematical formula, when there is other analysis, cannot, alone, be grounds for excluding [the damages expert's] methodology."  *Id*.  Here, Mr. Bakewell's opinion is similarly based on a sound methodology buttressed with robust analysis.

Similarly, in *Barry v. Medtronic, Inc.*, the defendant's damages expert considered a royalty rate from a prior agreement of plaintiff, then adjusted for differing circumstances and the *Georgia-Pacific* factors.  *Barry*, 2016 WL 7665423 at *2-3.  The court found that the expert "had done more than merely list the *Georgia-Pacific* factors and state without justification that they support his royalty rate," so it was "not an ipse dixit justification based on experience alone."  *Id.* at *3.  Noting that "courts do not require an expert to provide a mathematical formula in calculating a reasonable royalty rate," the court concluded that "[a] reasonable royalty calculation is by nature speculative, and failure to precisely quantify the contribution of each factor is by itself no basis to exclude expert testimony."  *Id*

9

Here, Mr. Bakewell's report demonstrates that his opinions and conclusions are the result of a detailed and reasoned analysis of relevant facts, with true consideration of each factor.  As in *Comcast IP* and *Barry*, Mr. Bakewell is not required to reduce his estimate down to a mathematical formula.  Sprint can cross examine Mr. Bakewell on the quantitative and qualitative aspects of his opinions, but these issues of weight do not render Mr. Bakewell's opinions inadmissible.  Sprint's motion to exclude them should be denied.

### ii. Sprint relies on case law that does not support exclusion of Mr. Bakewell's testimony

In support of its motion, Sprint cites to *Exmark, LaserDynamics,* and *Whitserve*.—cases where the excluded opinions pale in comparison to Mr. Bakewell's detailed analysis.  Motion at 8.  None of those cases supports exclusion of Mr. Bakewell's opinion.

Unlike the damages expert excluded in *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group, LLC*, Mr. Bakewell provides a range of quantitative indicators of a reasonable royalty for the patents-in-suit based directly on the record.  879 F.3d 1332 (Fed. Cir. 2018).  The Federal Circuit found that the damages expert in *Exmark* "merely addressed the Georgia-Pacific factors in light of the facts and then plucked the 5% royalty rate out of nowhere."  *Id*. at 1351..  The court described the defect in the damages expert's methodology:

> Relying on the testimony of experts and fact witnesses, [the expert] identified a number of advantages arising from the use of the claimed baffle [].  She concluded that negotiators would have recognized the importance of these advantages to customers and operators and the key role they play [] in Briggs' sale of its mowers.  She repeated these advantages as relevant to Georgia-Pacific factors nine (utility and advantage of the patented technology) and ten (the nature of the patented invention).  But she did not explain how these advantages, or her analysis of the Georgia-Pacific factors, led to her proposed 5% royalty.

*Id*. at 1350.  As is apparent, the damages expert in *Exmark* did not quantify *any* royalty data points.  Rather, she merely discussed the advantages associated with the patent-in-suit without identifying how these advantages translated into economic benefit to the alleged infringer.

Similarly, Mr. Bakewell's analysis is markedly different from the one found deficient in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) because he relies on credible economic analysis and does not apply an arbitrary apportionment factor.  The excluded damages expert in *LaserDynamics* started with a 6% royalty rate to pay for an ODD alone, and concluded that 2% per laptop computer was the appropriate reasonable royalty.  *Id.* at 60.  But the court pointed out that there was no evidence in the record to suggest that his starting point included the patented technology or even ODD methods. *Id.* at 61. The damages expert had dismissed all sixteen LaserDymanics licenses.  *Id.* Then, based on discussion with LaserDynamic's other experts, he determined that the patented technology in the ODD is responsible for one-third of the value of a laptop containing an ODD, and concluded that the royalty rate should be 2% per laptop. *Id.* Thus the court held that the damages expert "offer[ed] no credible economic analysis to support [his] conclusion" which "appear[ed] to have been plucked out of thin air."  *Id.  LaserDynamics* also fails to support exclusion of Mr. Bakewell's testimony.

Finally, in *Whitserve*, the Federal Circuit found multiple flaws in the damages expert's opinion that do not apply here because Mr. Bakewell calculates his baseline royalties using several comparable Sprint agreements involving rights to the patents-in-suit, does not apply an arbitrary rule of thumb, and conducts a thorough analysis of each *Georgia-Pacific* factor's impact on his baseline royalty rate.  He also uses a clearly and substantiated royalty base and royalty rate.  In *Whitserve*, on the other hand, the excluded expert had:

> . . . cited to the two lump sum payments as evidence to support an increased royalty rate under *Georgia-Pacific*, but did not offer any testimony to explain how those payments could be converted to a royalty rate. . . . As the starting point of his analysis, [he] used the now discarded rule of thumb that assumes the patentee would get about 25% of the infringer's expected profit had they reached an agreement before infringement began. . . . He did not explain how much each [*Georgia-Pacific*] factor affected the rate.

*Whitserve*, 694 F.3d at 30-31.   Because the excluded expert had only offered a "bare-bones Georgia-Pacific analysis" and "did not actually state the royalty base he used or the final reasonable royalty amount he thought was reasonable, the court concluded that "superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks, can not support the jury's verdict." *Id.* at 31-33.   Mr. Bakewell's analysis does not suffer any of those flaws, and thus, *Whitserve* does not support excluding Mr. Bakewell's opinion, either.

> **B.      Mr. Bakewell's opinions regarding the competitive landscape for Sprint's lost profits damages properly rely on analysis by Mr. Gilchrist and the facts of the case**

In rebutting Sprint's (Dr. Mangum's) lost profits claim that █████████████████ ███████████████████████████, Mr. Bakewell properly considers Sprint's competitors for wholesale VoIP services.   He concludes that Dr. Mangum's assessment of the competitive environment is flawed because Defendants had alternatives to purchasing VoIP services from Sprint.   Mr. Bakewell ties his analysis to the facts by citing evidence provided by Sprint, and also relies on Defendants' technical expert, Mr. Gilchrist.

Sprint mischaracterizes Mr. Bakewell's analysis of Sprint's competitors as resting solely on the fact that Sprint has not pursued other wholesale VoIP providers for patent infringement. Motion at 9-10.   Mr. Bakewell actually relies on multiple facts, from various sources.   For example, Mr. Bakewell notes that ███████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████     ABB, ¶171.[6]   Further, Mr. Bakewell notes several relevant pre-suit

---

[6] Mr. Bakewell also points out that Dr. Mangum does not take these competitors into account in his lost profits analysis; instead Dr. Mangum assumes that ███████████████████████ ██████████.   Defendants have moved to exclude Dr. Mangum's opinions on that basis. *See* D.I. 292, Defs. Mot. to Exclude Expert Testimony of Dr. Mangum.

representations by Sprint to Defendants about other VoIP wholesale providers.  For instance, Sprint told ████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████.  ABB, ¶172.  In addition, Sprint told ████████████████████████████████████████████████ ██████████████████████████.  *Id*.  Mr. Bakewell also relies on Mr. Gilchrist's analysis regarding ███████████████████████ being non-infringing alternatives.  ABB, ¶¶169-170.  Thus, far from *assuming* that Sprint's competitors' services were not infringing, Mr. Bakewell properly relies on Sprint's own words, additional relevant facts, and expert technical opinion to describe the competitive landscape for VoIP during the relevant damages period.

It is important to consider that Mr. Bakewell's analysis of the competitive landscape is provided in rebuttal to Dr. Mangum's lost profits analysis under *Panduit*.  *Panduit* requires Sprint to prove, among other elements, "the absence of an acceptable, non-infringing substitute for the patented product"; Sprint "is not entitled to lost profits if the patentee fails to establish any of the [ ] requirements."  *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991); *Mentor Graphics Corp. v. EVE-USA, Inc.,* 851 F.3d 1275, 1288 (Fed. Cir. 2017) ("[I]f there is a non-infringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale.").  As the Federal Circuit has recognized, "[t]he patentee bears the burden of proving damages."  *Whitserve*, 694 F.3d at 26.  Thus, under *Panduit*, it is Sprint's burden to show the lack of non-infringing alternatives. *SmithKline*, 926 F.2d at 1166 ("It was the patent owner's burden to prove it *actually* lost sales or that at least such inference is reasonable from all of the evidence.  That is the essence of a lost profits damage award.").  "[I]f the realities of the market are that others would

likely have captured sales made by the infringer, despite a difference in the products, it follows that the 'but for' test is not met." *Id.*   Here, Sprint improperly suggests that a finding of noninfringement by Sprint's competitors is required before Mr. Bakewell can discuss the realities of the competitive landscape for Sprint's VoIP wholesale service.  Motion at 10.  But the law does not require a finding of noninfringement.  *SmithKline*, 926 F.2d at 1166 ("[C]onsider[ation] [of] the realities of the marketplace" is required, and "[i]nfringement or noninfringement findings [are] *not* necessary to finding of acceptable substitutes.").  On the contrary, it is Sprint's burden to show a *lack* of non-infringing alternatives, but Dr. Mangum merely assumes there are no alternatives without analyzing services offered by Sprint's competitors.  Mr. Bakewell properly addresses Sprint's competitors and the realities of the marketplace, and his testimony is admissible.

Sprint's reliance on *Acceleration Bay LLC v. Activision Blizzard, Inc.* is unavailing because, unlike the expert in that case, Mr. Bakewell properly relies on a technical expert's opinion.  No. 16-cv-00453-RGA, 2019 WL 4194060, at *8 (D. Del. 2019).  In *Acceleration Bay*, the damages expert assumed non-infringement when no technical expert had opined that the earlier games were non-infringing.  *Id.*   Therefore, the Court held that such an assumption could not support a damages opinion based on a particular non-infringing alternative.  *Id.*  Here, Mr. Bakewell consults Mr. Gilchrist regarding whether ███████████████████████ would be considered non-infringing alternatives to the patents-in-suit (ABB, ¶169) and Mr. Gilchrist addresses ████████████████ as non-infringing alternatives in his expert report (Gilchrist, ¶962-964).  Because Mr. Bakewell relies on the opinion of a technical expert, not his own assumption, *Acceleration Bay* does not support excluding his opinion.

In short, Mr. Bakewell properly addresses Sprint's wholesale VoIP competitors, citing to the evidence and relying on Defendants' technical expert.  Sprint seeks to prevent Mr. Bakewell

from raising rebuttal evidence showing that Sprint failed to meet its burden of proving the absence of non-infringing alternatives; Sprint would have the jury consider less than the full picture of the competitive landscape.  Sprint's motion should be denied.

### C.    Mr. Bakewell properly relies on analysis by Mr. Gilchrist and the facts of the case regarding apportionment of VoIP technologies

Although the inventors of the patents-in-suit admitted that ███████████████

██████████████████████████,[7] Dr. Mangum nevertheless equates the patents-in-suit with VoIP and fails to apportion.  *See* ABB, ¶¶236-238.  As an illustration of that failure, Mr. Bakewell identifies other non-accused VoIP technologies and intangibles that should be excluded from Dr. Mangum's valuation.  ABB, ¶¶217-238.  Sprint seeks to exclude Mr. Bakewell's analysis by incorrectly suggesting it is purely based on Mr. Bakewell's "say-so." Motion at 10-11.  In fact, Mr. Bakewell relies on Mr. Gilchrist's analysis of other patents and technologies related to VoIP.  Gilchrist, ¶981-1002.  In addition, Mr. Bakewell provides a count of the U.S. Patents related to VoIP as identified by the patents themselves.[8]  ABB, ¶222 n.478. Mr. Bakewell also relies on Dr. Schankerman's research, which has been widely cited and used by courts to apportion value across patents in a portfolio.  ABB, ¶¶224-225.  Far from being mere "say-so," Mr. Bakewell's opinions are properly founded on analysis performed by a technical expert and tied to the facts in this case.

---

[7] *See* Ex. 6, Gardner 1/7/20 Dep. at 103:5–12
          , 103:1–18                                              ; Ex. 7, DuRee 1/17/20
Dep. at  225:13–15                                                    , 225:9–12
                                              , 226:10–12
                              .

[8] Sprint claims that there is no evidence that anybody else has ever used or paid for other patents related to providing VoIP.  First, that is irrelevant, as the value of a patent is not only existent when a third-party pays for its use.  Second, it is also inaccurate, as Mr. Bakewell references Verizon's and AT&T's patent litigation against Vonage for infringement of VoIP patents. ABB, ¶221 n.477.

Sprint's allegation that Mr. Bakewell does not provide the economic value of other technologies also fails. In fact, Mr. Bakewell specifically calculates the value of the VoIP equipment associated with the alleged infringement as          of VoIP's total value, with the rest being attributable to technologies unrelated to the patents-in-suit. ABB, ¶¶227-231. As support for his analysis, Mr. Bakewell utilizes the same white papers and presentations relied on by Dr. Mangum.

In short, it is undisputed that multiple unpatented features contribute to VoIP's value.[9] Mr. Bakewell provides admissible analysis that properly relies on a technical expert and the facts to address VoIP technologies that should be apportioned out. There is no basis to exclude Mr. Bakewell's opinions on the value of the patents-in-suit as a portion of VoIP's value.

### D.      Mr. Bakewell properly considers Defendants' agreements

Mr. Bakewell considers the license agreements of each Defendant involving intellectual property rights. ABB, ¶¶386, 414. Although Sprint improperly seeks to exclude Mr. Bakewell's opinions by claiming that Mr. Bakewell did "not perform any technical or economic comparability analysis for these agreements," (Motion at 12) Mr. Bakewell specifically analyzed the comparability of the agreements and concluded that they did not "involve rights to patents that are technically comparable to the patents-in-suit." ABB, ¶386. Mr. Bakewell, thus, does not rely on them to derive any baseline royalty figures or utilize them in calculating his ultimate reasonable royalty. The Defendant's agreements do, however, provide real-world insight into their licensing practices.

---

[9] Dr. Mangum admitted there were a number of unpatented features contributing to the lower capital expenditures associated with offering VoIP, such as the                (Ex. 8, Mangum 6/5/20 Deposition at 624:2–15, 627:3–12),                     (*Id.* at 626:4–9),              (*Id.* at 626:10–13), and               (*Id.* at 626:14–17).

Sprint complains that Mr. Bakewell observes that, while the agreements do not inform a royalty amount, they do support a lump sum royalty structure, as all of Defendants' agreements utilize lump-sum payments. Motion at 12-13. Defendants' licensing practices are a relevant factor within the analysis of a hypothetical negotiation. *LG Display Co., Ltd. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 472 (D. Del. 2010). Still, the structure of Defendants' agreements is not the sole basis of Mr. Bakewell's opinions that a lump-sum royalty is the proper structure. He also considers that all comparable agreements were structured as lump sum agreements; ████████████████ ████████████████████████████████████; and Sprint's designated corporate representative ████████████████████████████ ████████████████. ABB, ¶¶203-206. Furthermore, Mr. Bakewell notes that the royalty structure is less important because in this case the entire royalty term is undisputedly in the past, with no need to calculate future or ongoing royalties. Sprint's complaint rings hollow. Mr. Bakewell appropriately considered Defendants' agreements, and his opinions should not be excluded.

V.   **CONCLUSION**

In summary, Mr. Bakewell's opinions are admissible because they are founded squarely on record evidence and accepted methodologies. Sprint's implausible claim that Mr. Bakewell's opinions are "plucked out of nowhere" ignores the documented evidentiary and analytical bases for Mr. Bakewell's opinions. Mr. Bakewell's opinions regarding Sprint's competition, the importance of apportionment in this matter, and Defendant's licensing activities are all relevant to a proper damages analysis. Sprint's motion should be denied.

ASHBY & GEDDES

*/s Andrew C. Mayo*

_____

*Of Counsel*:                                      Steven J. Balick (2114)
                                                   Andrew C. Mayo (5207)
Robinson Vu                                        500 Delaware Ave, 8th Floor
Natalie Alfaro Gonzales                            P.O. Box 1150
Lindsay Volpenhein Cutié                           Wilmington, DE 19899
Amy E. Bergeron                                    SBalick@ashbygeddes.com
BAKER BOTTS L.L.P.                                 AMayo@ashbygeddes.com
One Shell Plaza
910 Louisiana Street                               *Attorneys for Defendants*
Houston, TX 77002-4995
(713) 229-1234

Timothy S. Durst
BAKER BOTTS L.L.P.
2001 Ross Avenue, Ste. 900
Dallas, Texas 75201-2980
(214) 953-6500


Dated: June 30, 2020

## Appendix A: Bakewell Report Parallel Citations

| Atlantic Broadband | Mediacom | RCN/Wave/Grande | WideOpenWest |
|---|---|---|---|
| ¶ 210 | ¶208 | ¶207 | ¶209 |
| ¶ 211 | ¶ 209 | ¶ 208 | ¶ 210 |
| ¶ 227 | ¶ 225 | ¶ 224 | ¶ 226 |
| ¶¶ 227-230 | ¶¶225-228 | ¶¶224-227 | ¶¶226-229 |
| ¶¶229-231 | ¶¶227-229 | ¶¶226-228 | ¶¶228-230 |
| ¶231, n. 506 | ¶229, n. 496 | ¶228, n. 510 | ¶230, n. 497 |
| ¶¶240-385, Exhibit 11 | ¶¶238-383, Exhibit 11 | ¶¶237-382, Exhibit 11 | ¶¶239-384, Exhibit 11 |
| ¶242, Exhibit 10 | ¶240, Exhibit 10 | ¶239, Exhibit 10 | ¶241, Exhibit 10 |
| Exhibit 2 | Exhibit 2 | Exhibit 2 | Exhibit 2 |
| ¶388 | ¶375 | ¶385 | ¶387 |
| ¶¶391-95 | ¶¶389-393 | ¶¶388-392 | ¶¶390-394 |
| ¶¶411-470 | ¶¶409-469 | ¶¶408-474 | ¶¶410-470 |
| ¶476 | ¶475 | ¶480 | ¶476 |
| ¶15 | ¶15 | ¶15 | ¶15 |
| ¶¶408-9 | ¶¶406-7 | ¶¶405-6 | ¶¶407-8 |
| ¶171 | ¶169 | ¶168 | ¶170 |
| ¶¶171-172 | ¶¶169-170 | ¶¶168-169 | ¶¶170-171 |
| ¶¶169-170 | ¶¶167-168 | ¶¶166-167 | ¶¶168-169 |
| ¶¶220-231 | ¶¶218-229 | ¶¶217-228 | ¶¶219-230 |
| ¶386 | ¶384 | ¶383 | ¶385 |
| ¶172 | ¶170 | ¶169 | ¶171 |
| ¶169 | ¶167 | ¶166 | ¶168 |
| ¶¶236-238 | ¶¶234-236 | ¶¶233-235 | ¶¶235-237 |
| ¶¶217-238 | ¶¶215-236 | ¶¶214-235 | ¶¶216-237 |
| ¶222 n. 478 | ¶220 n. 469 | ¶219 n. 483 | ¶221 n. 470 |
| ¶¶224-225 | ¶¶222-223 | ¶¶221-222 | ¶¶223-224 |
| ¶¶227-231 | ¶¶225-229 | ¶¶224-228 | ¶¶226-230 |

| ¶¶386, 414 | ¶¶384, 412 | ¶¶383, 411 | ¶¶385, 413 |
|---|---|---|---|
| ¶386 | ¶384 | ¶383 | ¶385 |
| ¶¶203-206 | ¶¶201-204 | ¶¶200-203 | ¶¶202-205 |