IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SPRINT COMMUNICATIONS COMPANY       )
L.P.,                               )
                                    )
            Plaintiff,              )
                                    )
      v.                            )  C.A. No. 17-1736 (RGA)
                                    )
MEDIACOM COMMUNICATIONS CORP.,      )
                                    )
            Defendant.              )

## JOINT PROPOSED PRETRIAL ORDER

POLSINELLI PC
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Of Counsel:*

B. Trent Webb
John D. Garretson
Aaron E. Hankel
Ryan J Schletzbaum
Ryan D. Dykal
Jordan T. Bergsten
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
sprintteam@shb.com

Robert H. Reckers
Michael W. Gray

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

G. Hopkins Guy, III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
(650) 739-7500

Roger Fulghum
Robinson Vu
Natalie Alfaro Gonzales
Lindsay Volpenhein Cutie
Amy E. Bergeron
Charles Stephen Maule
Lori Ding
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995

SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002-2926
(713) 227-8008
sprintteam@shb.com

*Attorneys for Plaintiff Sprint*
*Communications Company L.P.*

Dated: September 28, 2022

(713) 229-1234
DLBBMediacom-
SprintCases@BakerBotts.com

*Attorneys for Mediacom Communications*
*Corp.*

ii

# TABLE OF CONTENTS

Page

I.   NATURE OF ACTION AND THE PLEADINGS .................................................................1

II.  JURISDICTION ...................................................................................................................5

III. UNCONTESTED FACTS ....................................................................................................5

IV.  CONTESTED ISSUES OF FACT .......................................................................................9

    A.   Sprint's Contentions.................................................................................................9

        i.    Priority Claims..............................................................................10
        ii.   Infringement..................................................................................11
        iii.  Damages........................................................................................12
        iv.   Validity.........................................................................................12
        v.    Mediacom's Equitable Defenses....................................................13

    B.   Mediacom's Contentions .......................................................................................16

        i.    Priority Claims..............................................................................17
        ii.   Non-Infringement..........................................................................17
        iii.  No Willful Infringement................................................................17
        iv.   No Damages...................................................................................18
        v.    Invalidity......................................................................................18
        vi.   Equitable Estoppel and Implied License........................................19
        vii.  Implied Waiver..............................................................................23

V.   ISSUES OF LAW THAT REMAIN TO BE LITIGATED ................................................23

    A.   Sprint's Legal Claims ............................................................................................23

        i.    Literal Infringement......................................................................24
        ii.   Infringement Under the Doctrine of Equivalents............................25
        iii.  Willfulness....................................................................................25
        iv.   Compensatory Damages ................................................................25
        v.    Anticipation...................................................................................26
        vi.   Obviousness..................................................................................27
        vii.  Mediacom's Equitable Defenses....................................................27

    B.   Mediacom's Legal Claims .....................................................................................28

        i.    Non-Infringement..........................................................................29
        ii.   Invalidity......................................................................................30
        iii.  Other Defenses..............................................................................30
        iv.   Damages........................................................................................31

4889-2232-9394 v2

VI.     EXHIBITS TO BE OFFERED AT TRIAL .......................................................33

VII.    EXCHANGES OF DEMONSTRATIVES AND EXHIBITS DURING TRIAL ...............36

        A.      Exchange of Demonstratives and Exhibits to be Used in Opening
                Statements ...........................................................................................36

        B.      Exchange of Demonstratives and Exhibits to be Used with Witnesses
                During Trial .........................................................................................37

        C.      Exchange of Demonstratives and Exhibits to be Used During Closing
                Arguments ...........................................................................................38

VIII.   WITNESSES TO BE CALLED AT TRIAL ...................................................39

        A.      Plaintiff  Sprint.....................................................................................39

        B.      Defendant Mediacom ............................................................................40

        C.      Designation of Testimony by Deposition .................................................41

IX.     IDENTIFICATION OF ORDER OF WITNESSES AS TRIAL PROGRESSES .............42

X.      USE OF DEPOSITION TESTIMONY AT TRIAL AND EXCHANGES  OF
        DEPOSITION DESIGNATIONS DURING TRIAL ........................................43

XI.     OTHER AGREEMENTS REGARDING EXCHANGES AND MEET AND
        CONFERS.........................................................................................45

XII.    STATEMENTS OF INTENDED PROOF .....................................................46

        A.      Sprint's Statement................................................................................46

        B.      Mediacom's Statement..........................................................................46

XIII.   AMENDMENT OF THE PLEADINGS ........................................................47

XIV.    CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS ................................47

XV.     OTHER MATTERS.............................................................................47

        A.      Mediacom's Request to Submit Its Defenses to the Jury ......................47

        B.      Number of Invalidity Arguments............................................................51

        C.      Length of Trial .....................................................................................53

        D.      Order of Presentation of Evidence to the Jury .....................................53

     E.     Jury Instructions, Verdict Form, and Voir Dire......................................................54

     F.     Number of Jurors and Jury Procedures..................................................54

     G.     Currently Pending Motions........................................................................55

XVI.   OTHER STIPULATIONS .............................................................................................55

XVII.  ORDER TO CONTROL COURSE OF ACTION ........................................................56

4889-2232-9394 v2

## **TABLE OF EXHIBITS**

**Exhibit A**: Sprint's exhibit list, and Mediacom's objections thereto

**Exhibit B**: Mediacom's exhibit list, and Sprint's objections thereto

**Exhibit C**: List of designations, counter designations, and rebuttal designations of deposition testimony, and objections thereto, for witnesses Sprint intends to call by deposition

**Exhibit D**: List of designations, counter designations, and rebuttal designations of deposition testimony, and objections thereto, for witnesses Mediacom intends to call by deposition

4889-2232-9394 v2

Pursuant to Federal Rule of Civil Procedure 16, District of Delaware Local Rule 16.3, the August 29, 2018 Scheduling Order (D.I. 27) in this matter, as modified by subsequent Orders (*see, e.g.,* D.I. 101, 111, 126, 177, 573) Plaintiff Sprint Communications Company L.P. ("Sprint") and Defendant Mediacom Communications Corp. ("Mediacom") submit this Proposed Pretrial Order. The Pretrial Conference is scheduled for Wednesday, October 25, 2022 at 9:00 a.m., and a five-day jury trial is scheduled to begin on April 17, 2023 at 9:30 a.m. (D.I. 566, 571, 573).

The Parties have stipulated to the following matters as to the conduct of trial and the Court hereby orders:

## I.      NATURE OF ACTION AND THE PLEADINGS

1.      This is a patent infringement action in which Sprint asserts that Mediacom infringed the following patents and claims (collectively, "Asserted Patents" and "Asserted Claims"):

| U.S. Patent Number | Title | Asserted Claims |
|---|---|---|
| 6,343,084  ("the '084 Patent") | Broadband Telecommunications System | 7 |
| 6,633,561 ("the '3,561 Patent") | Method, System and Apparatus for Telecommunications Control | 24 |
| 6,463,052  ("the '052 Patent") | Method, System and Apparatus for Telecommunications Control | 4 |
| 6,452,932  ("the '932 Patent") | Method, System and Apparatus for Telecommunications Control | 16 |
| 6,473,429 ("the '429 Patent") | Broadband Telecommunications System | 7 |
| 6,298,064 ("the '064 Patent") | Broadband Telecommunications System | 7 |
| 7,286,561  ("the '6,561 Patent") | Method System and Apparatus for Telecommunications Control | 11 |

2.      Sprint asserts that it should recover damages from Mediacom for this infringement. *See* 35 U.S.C. § 284.  Sprint alleges that this infringement was willful, and that damages should

therefore be trebled.  *Id.* Sprint also requests that the Court award Sprint its attorneys' fees.  (*See* 35 U.S.C. § 285; D.I. 9.)

3.      Mediacom asserts that it does not infringe any of the Asserted Claims, that the Asserted Claims are invalid, that Sprint's enforcement of the Asserted Patents against Mediacom is barred, and that it does not owe Sprint damages.  Mediacom further disputes the amount of damages that Sprint seeks for the damages period of December 1, 2011-May 5, 2014, and denies that any infringement was willful. (*See* D.I. 19.)  Mediacom also requests that the Court award Mediacom its attorneys' fees.  (*See* 35 U.S.C. § 285.)

4.      All issues relating to the following patents referenced in the pleadings have been withdrawn:   U.S. Patent Nos. 7,693,131 ("the '131 Patent"), 6,999,463 ("the '463 Patent"), 7,324,534 ("the '534 Patent"), 6,563,918 ("the '918 Patent"), 7,327,728 ("the '728 Patent"), 6,330,224 ("the '224 Patent"), 6,697,340 ("the '340 Patent"), and 7,505,454 ("the '454 Patent") (collectively, "Withdrawn Patents") (D.I. 218, 248, 406).

5.      The operative pleadings are Sprint's First Amended Complaint (D.I. 9) and Mediacom's First Amended Answer to Sprint's First Amended Complaint (D.I. 19).  The Court held a *Markman* hearing on October 1, 2019. (*See, e.g.,* D.I. 157, Official Transcript of Markman Hearing held on 10/01/2019 before Judge Richard G Andrews.)  The Court issued a Memorandum Opinion on claim construction on December 20, 2019 (D.I. 211), and issued a Claim Construction Order on January 6, 2020. (D.I. 220.)  To the extent Sprint's or Mediacom's proposed constructions were not adopted, all parties object to the claim constructions and preserve their rights on those issues for appeal.

6.     The Court's claim constructions (per D.I. 220) are as follows:

| Term or Phrase | Claims[1] | Court's Construction |
|---|---|---|
| "a network code that identifies a network element to provide egress . . . from the packet communication system" | '3,561 Patent, claims 1, 24; '052 Patent, claim 1 | "a code identifying a network element which network element provides an exit from a packet communication system" |
| "a network code representing a network element to egress the call from the packet system" | '6,561 Patent, claim 14 | "a code identifying a network element which network element provides an exit from a packet communication system" |
| "interworking unit" | '429 Patent, claim 1; '084 Patent, claim 1; '064 Patent, claim 1 | "ATM interworking multiplexer" |
| "identifier(s)" | '084 Patent, claim 1; '429 Patent, claims 1, 7 | "data for routing user information in a packet network" |
| "signaling" / "signaling message" / "first message" | '3,561 Patent, claims 1, 24; '6,561 Patent, claim 11; '052 Patent, claim 1; '932 Patent, claim 1 | "the transfer of information among points and network elements" |
| "packet communication system" / "packet system" / "asynchronous communication system" | '3,561 Patent, claims 1, 24; '6,561 Patent, claims 11, 20; '052 Patent, claims 1, 4; '932 Patent, claim 1 | "system wherein packets are routed by network elements, wherein at least one network element is a switch"<br><br>"switch" is construed as set forth below |
| "switch(es)" / "telecommunication switches" | '932 Patent, claim 1; '3,561 Patent, claims 23, 38; '064 Patent, claim 7; | "device(s) that set up calls and relay voice and/or data information from one connection to another" |

---

[1] For simplicity and clarity, patents that have been withdrawn from the case are not listed in this chart.  However, all claims from the Asserted Patents that were identified in the Court's Order (D.I. 220) are listed in this chart.

| Term or Phrase | Claims[1] | Court's Construction |
|---|---|---|
|  | '429 Patent, claim 5 |  |
| "route(s) " / "routing" | '3,561 Patent, claims 1, 24; '6,561 Patent, claim 11; '084 Patent, claims 1, 7 | "direct(s) / directing through a [packet] communication system by a selected route or in a specified direction" |

7.      Both parties seek a jury trial on all issues triable by a jury.  The parties agree that non-jury issues that are to be tried by the Court include, but are not limited to, Sprint's contention that damages should be trebled under 35 U.S.C. § 284 the parties' respective contention that they each should be awarded their  attorneys' fees under 35 U.S.C. § 285, and Mediacom's claims that the patents are unenforceable due to Sprint's activities in various standard setting organizations. Mediacom proposes a two-day bench trial at the Court's convenience, including before the scheduled jury trial, on Mediacom's standards-related defenses.[2] As described further in Section XV, Sprint agrees to a bench trial following trial to the jury on liablity issues and damages, and contends that Mediacom's defenses of equitable estoppel and implied license should also be tried to the Court.  Sprint contends that the evidence is not completely overlapping and presenting the equitable issues would unnecessarily lengthen the jury trial. As described further in Section XV, Mediacom contends that its defense of implied license is properly tried in front of jury, as in other cases in this Court.  Mediacom further contends  that, to the extent Sprint's claim for willful infringement is tried to the jury, Mediacom's defense of equitable estoppel ought to be tried in

---

[2]  The parties agree that any pre-trial papers accompanying the bench trial(s), including any findings of fact and conclusions of law requested by the Court, will be filed at a later date to be approved by the Court.

4889-2232-9394 v2

front of a jury given the substantial overlap in evidence, and the Court may consider the jury's opinion on equitable estoppel as an advisory opinion.  Evidence, argument, and inference limited to non-jury issues not addressed above shall be bifurcated from the jury trial and presented only to the Court in one or more bench trials.

## II.     JURISDICTION

8.      This is an action for patent infringement brought under the Patent Laws of the United States, Title 35 U.S.C. §§ 101, *et seq.*

9.      No party contests personal or subject matter jurisdiction, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     No party contests that venue is lawful in the District of Delaware pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## III.    UNCONTESTED FACTS

11.     Sprint Communications Company L.P. ("Sprint") is a Limited Partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251.

12.     Mediacom is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Mediacom Way, Mediacom Park, New York 10918.

13.     On January 29, 2002, United States Patent No. 6,343,084 ("the '084 Patent") entitled "Broadband Telecommunications System" was issued by the U.S. Patent and Trademark Office ("U.S.P.T.O.") to Sprint with Joseph Michael Christie ("Christie") listed as inventor.

14.     The '084 Patent expired on May 5, 2014.

15.     The '084 Patent issued from U.S. Application No. 09/439,033 ("the '033 Application"), filed on November 12, 1999. The '033 Application is a continuation of U.S. Application No. 08/525,897 ("the '897 Application"), filed on September 8, 1995.

16.     On October 14, 2003, United States Patent No. 6,633,561 ("the '3,561 Patent") entitled "Method, System and Apparatus for Telecommunications Control" was issued by the U.S.P.T.O. to Sprint with Christie listed as inventor.

17.     The '3,561 Patent expired on May 5, 2014.

18.     The '3,561 Patent issued from U.S. Application No. 10/002,850 ("the '850 Application"), filed on November 14, 2001. The '850 Application is a continuation of U.S. Application No. 09/082,040, which is a continuation of U.S. Application No. 08/568,551, which is a continuation of the '605 Application, filed on May 5, 1994.

19.     On October 8, 2002, United States Patent No. 6,463,052 ("the '052 Patent") entitled "Method, System and Apparatus for Telecommunications Control" was issued by the U.S.P.T.O. to Sprint with Christie listed as inventor.

20.     The '052 Patent expired on May 5, 2014.

21.     The '052 Patent issued from U.S. Application No. 09/082,182 ("the '182 Application"), filed on May 20, 1998. The '182 Application is a continuation of U.S. Application No. 08/568,551, which is a continuation of the '605 Application, filed on May 5, 1994.On September 17, 2002, United States Patent No. 6,452,932 ("the '932 Patent") entitled "Method, System and Apparatus for Telecommunications Control" was issued by the U.S.P.T.O. to Sprint with Christie listed as inventor.

22.     The '932 Patent expired on May 5, 2014.

6

4889-2232-9394 v2

23.     The '932 Patent issued from U.S. Application No. 09/499,874 ("the '874 Application"), filed on February 7, 2000. The '874 Application is a continuation of U.S. Application No. 09/081,891, which is a continuation of U.S. Application No. 08/568,551, which is a continuation of the '605 Application, filed on May 5, 1994.

24.     On October 29, 2002, United States Patent No. 6,473,429 ("the '429 Patent") entitled "Broadband Telecommunications System" was issued by the U.S.P.T.O. to Sprint with Christie listed as inventor.

25.     The '429 Patent expired on May 5, 2014.

26.     The '429 Patent issued from U.S. Application No. 09/353,401 ("the '401 Application"), filed on July 15, 1999. The '401 Application is a continuation of the '897 Application, filed on September 8, 1995.

27.     On October 2, 2001, United States Patent No. 6,298,064 ("the '064 Patent") entitled "Broadband Telecommunications System" was issued by the U.S.P.T.O. to Sprint with Christie listed as inventor.

28.     The '064 Patent expired on May 5, 2014.

29.     The '064 Patent issued from U.S. Application No. 09/504,408 ("the '408 Application"), filed on February 15, 2000. The '408 Application is a continuation of U.S. Application No. 09/353,401, which is a continuation of the '897 Application, filed on September 8, 1995.

30.     On October 23, 2007, United States Patent No. 7,286,561 ("the '6,561 Patent") entitled "Method System and Apparatus for Telecommunications Control" was issued by the U.S.P.T.O. to Sprint with Christie listed as inventor.

31.     The '6,561 Patent expired on May 5, 2014.

7

32.    The '6,561 Patent issued from U.S. Application No. 10/633,798 ("the '798 Application"), filed on August 4, 2003. The '798 Application is a continuation of U.S. Application No. 09/082,040, which is a continuation of U.S. Application No. 08/568,551, which is a continuation of the '605 Application, filed on May 5, 1994.

33.    Collectively, the '3,561, '052, '932, '429, '064, '6,561, and '084 patents are the "Asserted Patents," and each expired on May 5, 2014.

34.    On August 20, 2004, Sprint and Mediacom entered into the "Letter Agreement" wherein Mediacom partnered with Sprint to provide voice-over IP ("VoIP") telephone services to Mediacom's cable customers.

35.    On January 13, 2010, Mediacom and Metaswitch Networks entered into the "Hardware Purchase and Software License Agreement" wherein Mediacom purchased softswitches and media gateways to provide VoIP telephone services to Mediacom customers.

36.    On or around June 11, 2010, Sprint and Mediacom agreed to migrate Mediacom telephone customers off of Sprint's VoIP network and onto Mediacom's VoIP network beginning in August 2010.

37.    Mediacom provided VoIP telephony phone services to its customers from August 2010 at least through the expiration of the Asserted Patents.

38.    Mediacom did not obtain an express license to the Asserted Patents.

39.    U.S. Patent No. 5,544,164 to Baran ("Baran '164") issued on August 6, 1996, from U.S. Patent Application No. 08/336,325, filed on November 8, 1994 as a continuation of U.S. Patent Application No. 07/953,744, which was filed on September 29, 1992.  Baran '164 qualifies as prior art to the claims of each Asserted Patents under pre-AIA 35 U.S.C. § 102(e).

8

40.     U.S. Patent No. 5,195,090 to Bolliger, et al. ("Bolliger") was filed on July 9, 1991 and issued on March 16, 1993.  Bolliger qualifies as prior art to the claims of each Asseretd Patent under pre-AIA 35 U.S.C. § 102(b).

41.     U.S. Patent No. 5,426,636 to Hiller, et al. ("Hiller '636") was filed on December 20, 1993 and issued on June 20, 1995.  Hiller '636 qualifies as prior art to the claims of each Asserted Patent under pre-AIA 35 U.S.C. §§ 102(a) and/or (e).

## IV.     CONTESTED ISSUES OF FACT

### A.     Sprint's Contentions

42.     Sprint presents the following contentions regarding issues of fact that remain to be litigated.  These contentions are based on the current status of the case and the Court's rulings to date.  Sprint reserves the right to modify or supplement these statements in response to subsequent Court rulings and/or any attempt by Mediacom to introduce different or additional contested facts.  The following statements are not exhaustive, and Sprint reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports.

43.     Sprint intends to offer evidence as to the issues of fact and issues of law identified in this Proposed Pretrial Order.  Sprint further intends to offer evidence to rebut evidence offered by Mediacom.  Should the Court determine that any issue of fact identified here is more appropriately considered an issue of law, Sprint incorporates such issues by reference into its contentions regarding issues of law to be litigated (*infra*).  To the extent that Sprint's contentions regarding issues of law to be litigated contain issues that the Court deems to be issues of fact, those issues are incorporated herein by reference.  Sprint does not assume the burden of proof with regard to any of the issues of fact listed below.  Sprint reserves its right to revise this statement.

i.   **Priority Claims**

44.     The inventions described in the '084 Patent were conceived by Joseph Christie no later than June 1994, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '897 Application on September 8, 1995.

45.     The inventions described in the '3,561 Patent were conceived by Joseph Christie at least as early as October 1993, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '605 Application.

46.     The inventions described in the '052 Patent were conceived by Joseph Christie at least as early as October 1993, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '605 Application.

47.     The inventions described in the '932 Patent were conceived by Joseph Christie at least as early as October 1993, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '897 Application on September 8, 1995.

48.     The inventions described in the '429 Patent were conceived by Joseph Christie no later than June 1994, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '897 Application on September 8, 1995.

49.     The inventions described in the '064 Patent were conceived by Joseph Christie no later than June 1994, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '897 Application on September 8, 1995.

50.     The inventions described in the '6,561 Patent were conceived by Joseph Christie at least as early as October 1993, and Mr. Christie thereafter diligently pursued reducing these inventive concepts into practice, resulting in the filing of the '605 Application.

4889-2232-9394 v2

ii.   **Infringement**[3]

51.    Mediacom infringed each of the Asserted Claims of the Asserted Patents by using, selling, and/or offering for sale its Voice over Internet ("VoIP") telephony services ("Accused Services").  *See, e.g.*, 35 U.S.C. §§ 271, 281, *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). More particularly, Mediacom directly infringed each of the Asserted Claims of the Asserted Patents by interconnecting its VoIP subscribers to the Public Switched Telephone Network ("PSTN"), and by connecting calls to and from Mediacom's VoIP subscribers over those connections to the PSTN.

52.    The Accused Services meet each limitation of one or more of the Asserted Claims of the Asserted Patents, literally or under the doctrine of equivalents, as those limitations have been construed by the Court. *Id.*

53.    Mediacom cannot identify any available, acceptable non-infringing alternatives to Sprint's patented VoIP technology.  Mediacom's alleged non-infringing alternatives do not avoid infringement of the Asserted Patents, and/or were not available to Mediacom, and/or were not acceptable to Mediacom, for technical and/or economic reasons.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017).

54.    Mediacom's infringement was willful. *See, e.g. Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 136 S. Ct. 1923, 1935 (2016).  Mediacom was on notice of the Asserted Patents at least as early as September 2007 when Sprint notified Mediacom of its successful patent litigation against Vonage.  Mediacom was aware of Sprint's belief that Mediacom needed a license to the Asserted Patents at least as early as July 2012.

---

[3] Infringement, both literal and under the doctrine of equivalents, is a question of fact. *See Teleflex, Inc. v. Ficosa NA Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

### iii.   **Damages**

55.     Sprint should be awarded damages based on Mediacom's infringement of one or more of the Asserted Patents since December 1, 2011, the six year period preceding the filing of the Complaint in this matter, plus pre- and post-judgment interest and costs. *See* 35 U.S.C. § 284; Fed. R. Civ. P. 54; 28 U.S.C. § 1920.  Damages should be awarded based on lost profits (*see, e.g., Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)) or, alternatively, the analytical approaches approved by the Federal Circuit (*see, e.g., TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986); *Tektronix, Inc. v. U.S.*, 552 F.2d 343 (Ct. Cl. 1977)), and should not be less than a reasonable royalty determined under the hypothetical negotiation approach (*see* 35 U.S.C. § 284).

56.     The Court should treble any damages award due to Mediacom's willful infringement.  *See* 35 U.S.C. § 284; *see also Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 136 S. Ct. 1923, 1935 (2016).

57.     This is an "exceptional case" under 35 U.S.C. § 285.  Accordingly, the Court should award Sprint its reasonable attorney fees. *See* 35 U.S.C. § 285; Fed. R. Civ. P. 54.

### iv.   **Validity**

58.     The Asserted Claims of the Asserted Patents are valid.  The Asserted Claims are presumed valid under 35 U.S.C. § 282, and Mediacom cannot overcome this presumption by clear and convincing evidence.

59.     There is no evidence that any prior art reference discloses, expressly or inherently, each and every limitation of any of the Asserted Claims.  Accordingly, Mediacom cannot prove by clear and convincing evidence that any of the Asserted Claims are anticipated under 35 U.S.C. § 102.

60.     There is no evidence that any prior art reference, alone or in combination, discloses each limitation of any of the Asserted Claims, or that there is any motivation or suggestion to combine elements of the prior art in the manner claimed.  Accordingly, Mediacom cannot prove by clear and convincing evidence that any of the Asserted Claims are obvious under 35 U.S.C. § 103.

61.     The Com21 System is not prior art to the asserted patents.

62.     As explained in Section XV, Mediacom has not reduced its invalidity theories to three arguments.

v.    **Mediacom's Equitable Defenses[4]**

63.     The Asserted Patents are presumed valid and enforceable. *See* 35 U.S.C. § 282. Mediacom cannot meet its burden to show that Sprint's claims are barred under the doctrine of equitable estoppel or implied license by equitable estoppel.

64.     On December 17, 2007, Sprint notified Mediacom by written letter from James Patterson, Sprint's Vice President of Cable Solutions, to Calvin Craib that (1) Sprint has "a portfolio of over 120 U.S. voice over packet ('VOP') patents"; (2) "Sprint's VOP patents cover various architectures, components and methods for interfacing between the PSTN and packet-based networks"; (3) in 2007, Vonage was found to infringe several Sprint VOP patents by "providing telecommunications services that allowed calls to be connected between the PSTN and the Internet"; (4) "to the extent Sprint is providing the VoIP termination services, then Sprint's

---

[4] Sprint contends that none of these equitable defenses may be presented to the jury, and they should only presented to the Court in a bench trial. Mediacom's position is that, to the extent Sprint's claim for willful infringement is tried to the jury, Mediacom's defenses of equitable estoppel and implied license should also be tried to the jury because of the overlap in evidence, and the Court may consider the jury's opinion on these defenses as an advisory verdict.

cable partners benefit from Sprint's patented technology and no separate license is necessary" and (5) "Sprint will protect the technology utilized by its cable partners and will aggressively enforce its intellectual property against all unauthorized use."

65.     At least as early as July 2012, Mediacom was aware (1) of the Asserted Patents by number, (2) that there was a risk that Sprint would sue Mediacom and seek damages for infringing the Asserted Patents, (3) that Sprint demanded Mediacom pay Sprint for a license to the Asserted Patents, and (4) that Vonage was previously found by a jury to have infringed the Asserted Patents for providing VoIP telephone services without a license to the Asserted Patents.

66.     During the course of their business relationship, and following Mediacom's decision to offer VoIP services without Sprint's assistance, Sprint never represented to Mediacom that as long as Sprint and Mediacom were doing business, Sprint would not sue Mediacom for patent infringement.  Mediacom appreciated the risk that it would be sued for patent infringement by Sprint and did not rely on Sprint's conduct or silence in deciding to offer VoIP services without Sprint's assistance.

67.     In appreciation of this risk, Mediacom requested a "release" from past "damages" for "alleged infringement of Sprint's Patents," including the Asserted Patents, in negotiating the 2012 MVNO Agreement.  Mediacom was aware that if it did not meet the requirements for a release in the 2012 MVNO Agreement and that Sprint could seek past damages for Mediacom's infringement of the Asserted Patents.

68.     In full awareness of the risk that Sprint would seek damages for Mediacom's infringement of the Asserted Patents, Mediacom failed to meet the requirements for a release in the 2012 MVNO Agreement and has never obtained an express or implied license to the Asserted Patents.

69.     Mediacom has not been materially prejudiced by Sprint's conduct or silence. Indeed, Mediacom made the calculated business decision in the face a known risk to infringe the Asserted Patents.

70.     Sprint also did not materially delay in filing this lawsuit in December 2017. Sprint made an offer to compromise under Rule 408 that would have released Mediacom from damages in 2012.  In 2015, Mediacom notified Sprint that it would not satisfy the conditions for a release. At that time Sprint was actively enforcing its VOP patents against other cable companies similarly situated to Mediacom, and Mediacom was well aware of these enforcement efforts.  Sprint's enforcement included lawsuits against Time Warner Cable, Comcast, Cable One, and Cox Communications from December 2011 through a jury trial against Time Warner Cable in March 2017 with appeals to the Federal Circuit and United States Supreme Court in 2018.  Sprint filed this lawsuit against Mediacom within months after a jury found that Time Warner Cable had willfully infringed Sprint's VOP patents.  Mediacom was aware of Sprint's related litigation against other cable companies and, true to Sprint's word in the 2007 letter to Mediacom, Sprint was actively enforcing its patents against unauthorized use.

71.     Mediacom cannot show that Sprint impliedly licensed the Asserted Patents to Mediacom or that Sprint is equitably estopped from asserting its claims against Mediacom.

72.     Sprint is not barred from enforcing its rights to the Asserted Patents by implied waiver because it purportedly failed to disclose the Asserted Patents to a relevant standard setting organization.  The Asserted Patents are not essential to practicing the telecommunications standards identified by Mediacom and Sprint was under no obligation to disclose the Asserted Patents to a standards organization.  Further, Sprint did not participate in formulating the telecommunications standards identified by Mediacom.  Mediacom did not participate in the

standards organizations, and as such, Sprint did not influence Mediacom in using any telecommunications standard.

### B.    Mediacom's Contentions

73.     Pursuant to Local Rule 16.3(c)(4), Mediacom presents the following statement of issues of fact that remain to be litigated.  This statement is based on the current status of the case and the Court's rulings to date.  The identification of these issues is based in part on Mediacom's current understanding of Sprint's arguments regarding its infringement, validity, and damages positions, which are based on the pleadings and discovery to date.  Mediacom reserves the right to supplement, amend, or modify this list, for example, to respond to any issues, arguments, or evidence raised by Sprint, or in the event of any Court ruling that might raise new or additional issues.  Mediacom intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order.  Mediacom further intends to offer evidence to rebut any evidence offered by Sprint.  The following statements are not exhaustive, and Mediacom reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports.

74.     If the Court determines that Mediacom's statement of the issues of law that remain to be litigated as set forth below contains issues of fact, those issues of fact are incorporated herein by reference.  Should the Court determine that any issue identified in this statement as a factual issue is more appropriately considered a legal issue, Mediacom incorporates such issues by reference below into its statement of issues of law to be litigated.  Except as required by law, Mediacom does not assume the burden of proof with regard to any of the below mentioned facts. Mediacom reserves the right to revise this statement.

i.   **Priority Claims**

75.   The Asserted Claims are not entitled to any priority dates earlier than the filing dates of the applications that resulted in the Asserted Patents.

76.   The inventions described in the '064 Patent, '084 Patent, and '429 Patent were not conceived by Joseph Christie in June 1994.

77.   To the extent Mr. Christie conceived of any inventive concepts in June 1994, Mr. Christie did not thereafter diligently pursue reducing any such inventive concepts into practice before the September 8, 1995 filing date.

78.   The inventions described in the '3,561 Patent, '052 Patent, '932 Patent and '6,561 Patent were not conceived by Joseph Christie in October 1993.

79.   To the extent Mr. Christie conceived of any inventive concepts in October 1993, Mr. Christie did not thereafter diligently pursue reducing any such inventive concepts into practice before the May 5, 1994 filing date.

ii.   **Non-Infringement**

80.   Mediacom has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents.

iii.   **No Willful Infringement**

81.   Mediacom has not willfully infringed any claim of the Asserted Patents.

82.   Mediacom did not have requisite specific knowledge of the Asserted Patents to support a finding of willful infringement.

83.   Mediacom negotiated for, and obtained, an agreement that Sprint would not sue Mediacom for infringement of the Sprint Patents for the duration of the MVNO Agreement, during which time all of the Asserted Patents had expired.  Mediacom also subjectively believed, and

continues to believe, it is entitled to a release for any damages from potential infringement that occurred through the duration of the MVNO Agreement.

### iv.    **No Damages**

84.    Sprint has not met its burden to prove that it is entitled to an award of damages, nor has Sprint has met its burden to prove what the amount of a reasonable royalty based on Mediacom's alleged infringement of the Asserted Patents would be.

85.    To the extent Sprint seeks lost profits, Mediacom denies that Sprint is entitled to such damages.   There were several non-infringing alternatives available to Mediacom.   As explained in more detail in the rebuttal expert report of Mr. Seamus Gilchrist and Mediacom's interrogatory responses, non-infringing alternatives include at least circuit-switched networks, a telephony service with pure IP-to-IP interconnections, the ComUNITY telephone system offered by Com21, Vision O.N.E. System offered by Siemens, Incite Network, Arris Cornerstone System, and systems that perform the allegedly infringing features of telephone call connection between a narrowband (TDM, circuit-switched) network and broadband (packet, asynchronous) network, but do not contain an external processing system as claimed by the Asserted Claims.   In addition, Mediacom could have used the products or services of a party licensed to Sprint.

86.    Sprint is not entitled to prejudgment interest.

### v.    **Invalidity**

87.    All Asserted Claims of the Asserted Patents are invalid.

88.    The relevant date for determining whether art is prior art to the claims of the '064 Patent, '084 Patent, and '429 Patent is September 8, 1995.

89.    The relevant date for determining whether art is prior art to the claims of the '3,561 Patent, '052 Patent, '932 Patent and '6,561 Patent is May 5, 1994.

90.     The Com 21 System qualify as prior art to the claims of the Asserted Patents under pre-AIA 35 U.S.C. §§ 102(a), (b), and/or (g).

91.     Each of Sprint's Asserted Claims is invalid, either as anticipated under 35 U.S.C. §§ 102(a), (b), (e), and/or (g), or is obvious under 35 U.S.C. § 103 in view of Baran '164/Com 21 System, Bolliger, and Hiller '636, as described in the expert report of Mr. Seamus Gilchrist (collectively, the "prior art"):

| Asserted Patent | Asserted Claim | Invalidity |
|---|---|---|
| '6,561 | 11 | Baran '164/Com 21 System (§ 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636 (§§ 102, 103) |
| '3,561 | 24 | Baran '164/Com 21 System (§ 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636  (§§ 102, 103) |
| '932 | 16 | Baran '164/Com 21 System (§§ 102, 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636  (§§ 102, 103) |
| '052 | 4 | Baran '164/Com 21 System (§§ 102, 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636 (§ 103) |
| '429 | 7 | Baran '164/Com 21 System (§§ 102, 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636 (§§ 102, 103) |
| '084 | 7 | Baran '164/Com 21 System (§ 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636 (§§ 102, 103) |
| '064 | 7 | Baran '164/Com 21 System (§ 103)<br>Bolliger (§§ 102, 103)<br>Hiller '636 (§ 103) |

vi.     **Equitable Estoppel and Implied License**

92.     As outlined in greater detail in Mediacom's interrogatory responses, Sprint's claims for relief are barred, in whole or in part, by the doctrines of equitable estoppel and/or implied license due in part to Sprint's delay in filing the present case despite the fact that Sprint knew or should have known of the basis for its claims against Mediacom many years ago.

93.     As early as 2004, Sprint and Mediacom entered into a relationship whereby Sprint provided services to Mediacom, and in 2007, Sprint and Mediacom also entered into a Custom Service Agreement for Wireless Services related to Sprint's provision of Sprint PCS wireless services and Nextel wireless services to Mediacom.  Sprint knew that Mediacom had chosen to transition away from Sprint being its VoIP provider no later than mid-2010.  Sprint also knew the technical architecture of the VoIP service used by Mediacom.

94.     Sprint and Mediacom entered into a Custom Service Agreement for Wireless Services in 2007 related to Sprint's provision of Sprint PCS wireless services and Nextel wireless services to Mediacom.

95.     During the course of their business relationship, Sprint represented to Mediacom that as long as Mediacom was doing business with Sprint, Sprint would not sue Mediacom for patent infringement.

96.     In July 2012, Sprint and Mediacom entered into a Master Wireless Wholesale Services Agreement ("MVNO Agreement"), whereby Sprint agreed to provide data and other services to Mediacom customers.  That agreement provided that Sprint would not assert any Sprint Patents against Mediacom for any activities occurring before or during the term of the areement so long as such activities were not provided for Mediacom by a competitor of Sprint. That agreement further provided that if after three years, Mediacom purchased at least $5,000,000 in services, Sprint would release Mediacom for any alleged infringement of certain Sprint patents, including the Asserted Patents, that occurred before or during the initial three year period of the Agreement. This release would cover the entire damages period for all Asserted Patents.

97.     More particularly, Section 16 of the that agreement provided, in relevant part, that:

> During the Term of this Agreement, Sprint agrees not to assert any Sprint Patents against Purchaser or any of its Affiliates for any activities of

Purchaser or its Affiliates occurring before or during the Term of this Agreement so long as such activities were not provided for Purchaser or its Affiliates by a competitor of Sprint. Notwithstanding the foregoing, Sprint's agreement to not file any lawsuit against Purchaser or any of its Affiliates associated with any alleged infringement of Sprint's Patents for services not provided under this Agreement shall be contingent upon 1) this Agreement remaining in effect during the entire Term, 2) Sprint being Purchaser's and its Affiliates' exclusive provider for wholesale wireless services of a similar nature to the Private Label Service within each CDMA Market, LTE Market, WiMAX Market and Sprint Service Provider Affiliate Market during the entire Term, 3) Purchaser meeting its revenue commitments under this Agreement and 4) Purchaser or any of its Affiliates asserting no patent related claim against Sprint or its Affiliates for any activity of Sprint or its Affiliates occurring before or during the entire Term….This agreement to not file suit does not waive the right for Sprint to claim any damages during the Term, however, if after three years from the Effective Date of this Agreement, Purchaser purchases at least $5,000,000 in Services under this Agreement and that amount is received by Sprint and is not subject to any dispute or other claim of return by Purchaser, then conditioned on Purchaser's compliance with each of the above provisions in this Section 16, Sprint agrees to execute a release to Purchaser at the end of the initial three year period of the Term of this Agreement for any damages for any alleged infringement of the Sprint Patents that occurred before or during the initial three year period of the Term of this Agreement.

98.    Sprint knew that Mediacom had chosen not to renew the 2012 agreement no later than March 10, 2015, when Jerold Lambert sent Scott Kalinoski a letter stating that Mediacom had chosen not to renew its agreement with Sprint.  Following termination of that agreement, Mediacom requested that Sprint execute the release.  The terms of the agreement and Sprint's unreasonable delay in filing suit against Mediacom after the termination of this agreement led Mediacom to reasonably infer that Sprint did not intend to enforce the Asserted Patents against Mediacom.  From these prior business dealings, including Sprint's assistance with Mediacom's transition away from Sprint's VoIP services, Sprint was aware (if and to the extent it was not otherwise or previously aware) that Mediacom had implemented a VoIP network using third-party hardware, including softswitches and media gateways, to convert traffic from PSTN to IP.

99.    On December 1, 2017, Sprint filed the present lawsuit.

Sprint's delay in filing suit materially prejudiced Mediacom's ability to marshal evidence relevant to its defenses (including, but not limited to, detailed recollections of participants in the events described above and below) due to loss of records, reliance on memories of long past events, and a variety of other reasons. In addition, Mediacom is materially prejudiced economically at least to the extent there is any loss of monetary investments or financial damage that likely would have been prevented by earlier suit.

100.    Sprint's claims for relief are further barred, in whole or in part, due to Sprint's actions, inactions, silence, and/or concealment of material facts, including, but not limited to, Sprint's prior interactions with Mediacom and other MSOs (including Sprint's failure to notify Mediacom and/or other MSOs of Sprint's asserted patents and/or inaction after having knowledge of the cable industry's use of the accused technology), Sprint's activities concerning Mediacom and its relationships with other MSOs, and Sprint's licensing and enforcement of the asserted patents.

101.    Sprint was silent regarding the Asserted Patents while it sought to establish active relationships with Mediacom in the technology and business areas where Sprint now claims Mediacom is infringing, and while Sprint was pursuing litigation against other companies concerning asserted patents. This silence led Mediacom to reasonably infer that Sprint would not assert its patents against Mediacom.

102.    Due to Sprint's silence, Mediacom has expended substantial resources developing its VoIP architecture, and Mediacom will be materially prejudiced if Sprint is allowed to proceed with its claims. Moreover, in light of Sprint's conduct described above, Mediacom could reasonably infer that Sprint consented to Mediacom's use of Sprint's patents.

103.    Sprint's lawsuit is barred by equitable estoppel.  Mediacom reasonably inferred from Sprint's misleading conduct and inaction that it had the right to perform the services accused of infringing Sprint's Asserted Patents.

104.    Mediacom also is impliedly licensed to practice the Asserted Patents.  Sprint impliedly granted Mediacom a license to the Asserted Patents through its actions and conduct throughout the parties' relationship.

### vii.    Implied Waiver

105.    Sprint is barred from enforcing its rights to the Asserted Patents by implied waiver because it failed to disclose the Asserted Patents to a relevant standard setting organization.  Sprint alleges that at least certain of the Asserted Patents are infringed by practicing one or more standards and, therefore, that at least some of the Asserted Patents are essential to those standards.  These protocols have been developed and standardized by several standards organizations including ITU, IETF, ETSI, 3GPP; and CableLabs.  Each of these organizations has policies regarding disclosure of what are referred to as "Intellectual Property Rights" ("IPRs").  Under these policies, members are obligated to disclose IRPs, such as patents, that may be relevant to the specification or standard being developed. Sprint's employees and former employees have testified that they attended standards meetings while employed at Sprint, including ANSI, IEEE, IETF, ITU, 3GPP, and the ATM standards forum, and participated in development of standards and voted on standards in at least some of these organizations.  No Sprint employee recalled ever disclosing any Sprint patents at these meetings, much less the Asserted Patents.

106.

## V.    ISSUES OF LAW THAT REMAIN TO BE LITIGATED

### A.    Sprint's Legal Claims

107.    Sprint identifies the following issues of law that remain to be litigated, with a citation to the authorities relied upon.  These contentions are based on the arguments it expects to make at trial, as well as its understanding of the arguments that Mediacom is likely to make.  If Mediacom seeks to introduce different legal arguments, Sprint reserves the rights to supplement these contentions.  These contentions are based on the current status of the case and the Court's rulings to date.  Sprint reserves the right to modify or supplement these contentions in response to any subsequent rulings by the Court.  Sprint will include in its proposed jury instructions its positions on how the jury should be instructed on the law relevant to this case.  If an issue identified herein is more properly considered an issue of fact, it should be so considered.  If any issues of fact are more properly considered issues of law, those issues are incorporated into this statement. The authority cited herein is not exhaustive; Sprint reserves the right to rely on authority not cited in this statement.

108.    Sprint objects to Mediacom presenting any non-infringement, invalidity, affirmative defenses, arguments, or opinions that it has not properly preserved in its First Amended Answer to Sprint's First Amended Complaint  (D.I. 19), disclosed in its discovery responses or its expert reports, and/or any non-infringement, invalidity, affirmative defenses, arguments or opinions precluded by the Court.

i.    **Literal Infringement**

109.    Sprint will prove by a preponderance of the evidence that Mediacom literally infringed the following Asserted Claims:

| U.S. Patent Number | Title | Asserted Claims |
|---|---|---|
| 6,633,561 ("the '3,561 Patent") | Method, System and Apparatus for Telecommunications Control | 24 |

| 6,463,052 ("the '052 Patent") | Method, System and Apparatus for Telecommunications Control | 4 |
| 6,452,932 ("the '932 Patent") | Method, System and Apparatus for Telecommunications Control | 16 |
| 7,286,561 ("the '6,561 Patent") | Method System and Apparatus for Telecommunications Control | 11 |

*See*, *e.g.*, 35 U.S.C. §§ 271, 281.

## ii.   Infringement Under the Doctrine of Equivalents

110.   Sprint will prove by a preponderance of the evidence that Mediacom infringed the following Asserted Claims under the doctrine of equivalents:

| U.S. Patent Number | Title | Asserted Claims |
|---|---|---|
| 6,343,084 ("the '084 Patent") | Broadband Telecommunications System | 7 |
| 6,473,429 ("the '429 Patent") | Broadband Telecommunications System | 7 |
| 6,298,064 ("the '064 Patent") | Broadband Telecommunications System | 7 |

*See, e.g., Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co*., 520 U.S. 17, 21 (1997).

## iii.   Willfulness

111.   Sprint will prove by a preponderance of the evidence that Mediacom's infringement was willful, including by willful blindness.  *See* 35 U.S.C. § 284; *See, e.g., Global Tech. Appliances, Inc. v. SEB S.A*., 563 U.S. 754, 766-70 (2011); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016).

## iv.   Compensatory Damages

112.   Sprint will prove by a preponderance of the evidence that that it is entitled to an award of damages adequate to compensate it for Mediacom's infringement of the Asserted Patents since December 1, 2011. *See, e.g., Smithkline Diagnostics, Inc. v. Helena Labs. Corp*., 926 F.2d 1161, 1164 (Fed. Cir. 1991). Damages should be awarded based on lost profits (*see, e.g., Panduit*

*Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)) or, alternatively, the analytical approaches approved by the Federal Circuit (*see, e.g., TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986); *Tektronix, Inc. v. U.S.*, 552 F.2d 343 (Ct. Cl. 1977)), and should not be less than a reasonable royalty under the hypothetical negotiation paradigm (*see* 35 U.S.C. § 284).

113.    Sprint will prove by a preponderance of the evidence that it is entitled to award of pre-judgment and post-judgment interest and costs. *See* 35 U.S.C. § 284; Fed. R. Civ. P. 54; 28 U.S.C. § 1920; 35 U.S.C. § 284; *Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 136 S. Ct. 1923, 1934-35 (2016)(citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1758 (2014)).

114.    Sprint will prove by a preponderance of the evidence that it is entitled to trebled damages, due to Mediacom's willful infringement.  *See* 35 U.S.C. § 284; *Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 136 S. Ct. 1923, 1934-35 (2016).

115.    Sprint will prove by a preponderance of the evidence that it is entitled to its reasonable attorney fees.  *See* 35 U.S.C. § 285; Fed. R. Civ. P. 54; *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1755-1756 (2014).

v.    **Anticipation**

116.    The Asserted Claims are presumed valid under 35 U.S.C. § 282.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  Mediacom cannot prove by clear and convincing evidence that any of the Asserted Claims are anticipated under 35 U.S.C. § 102.  *Id.*; *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc*., 725 F.3d 1341, 1351 (Fed. Cir. 2013).

###### vi.   **Obviousness**

117.     The Asserted Claims are presumed valid under 35 U.S.C. § 282.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  Mediacom cannot prove by clear and convincing evidence that any of the Asserted Claims are obvious under 35 U.S.C. § 103. *Id.; KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 406, and 421 (2007).

###### vii.   **Mediacom's Equitable Defenses**

118.     <u>Equitable Estoppel</u>: Mediacom cannot meet its burden to prove that Sprint is estopped from asserting its claims. *See High Point SARL v. Spring Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016); *SCA Hygiene Prods. Aktiebolag v. First Quality Prods., LLC*, 767 F.3d 1339, 1343 (Fed. Cir. 2014) (alleged infringer must prove elements by a preponderance of the evidence), aff'd after reh'g en banc, 807 F.3d 1311 (Fed. Cir. 2015) (adopting reasoning of panel concerning equitable estoppel).

119.     Mediacom cannot show that Sprint engaged in misleading conduct from which it reasonably inferred that Sprint did not intend to enforce its patents against them. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (en banc).  "[S]ilence alone will not create an estoppel unless there was a clear duty to speak or somehow the patentee's continued silence reinforces the defendant's inference form the plaintiff's known acquiescence that the defendant will be unmolested." *Id*. at 1043-44. Mediacom cannot show that Sprint engaged in silence "accompanied by some other factor which indicates that the silence was sufficiently misleading as to amount to bad faith." *See High Point SARL v. Spring Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016) (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992)).

120.    Mediacom cannot meet its burden to show that "it substantially relied on the misleading conduct of the patentee in connection with taking some action." *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992) (en banc). Nor can Mediacom show that any alleged reliance was reasonable. *See SCA Hygiene Prods. Aktiebolag v. First Quality Prods., LLC*, 767 F.3d 1339, 1351 (Fed. Cir. 2014).

121.    Mediacom cannot meet its burden to show that it was materially prejudiced by Mediacom's purported reliance on Sprint's conduct. *See SCA Hygiene*, 767 F.3d at 1350 (citing *Aukerman*, 960 F.2d at 1028, 1041-42).

122.    <u>Implied License</u>: Mediacom cannot meet its burden to prove that Mediacom has an implied license to Sprint's Asserted Patents that bars Sprint's claims. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997).

123.    <u>Standards Defense</u>:   Mediacom cannot meet its burden to prove that Sprint impliedly waived its right to assert infringement claims for the Asserted Patents based on purported participation in standard setting organizations. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347-48 (Fed. Cir. 2011); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365-66 (Fed. Cir. 2018).

### B.    Mediacom's Legal Claims

124.    Mediacom identifies the following issues of law that remain to be litigated, with a citation to the authorities relied upon.  These contentions are based on the arguments it expects to make at trial, as well as its understanding of the arguments that Sprint is likely to make.  If Sprint seeks to introduce different legal arguments, Mediacom reserves the rights to supplement these contentions.  These contentions are based on the current status of the case and the Court's rulings to date.  Mediacom reserves the right to modify or supplement these contentions in response to

any subsequent rulings by the Court.  Mediacom will include in its proposed jury instructions its positions on how the jury should be instructed on the law relevant to this case.  If an issue identified herein is more properly considered an issue of fact, it should be so considered.  If any issues of fact are more properly considered issues of law, those issues are incorporated into this statement. The authority cited herein is not exhaustive; Mediacom reserves the right to rely on authority not cited in this statement.

125.    Mediacom objects to Sprint presenting any infringement, validity, or other arguments or opinions that it has not properly preserved in its First Amended Complaint  (D.I. 9), disclosed in its discovery responses or its expert reports, and/or any infringement, validity, or other arguments or opinions precluded by the Court.

i.    **Non-Infringement**

126.    Whether Sprint can prove by a preponderance of the evidence that Mediacom infringed any Asserted Claims of the Asserted Patents, either literally or under the doctrine of equivalents.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc*., 261 F.3d 1329, 1336 (Fed. Cir. 2001); *see also Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15, 1342 (Fed. Cir. 2005).

127.    Whether Sprint can prove by a preponderance of the evidence that Mediacom willfully infringed any Asserted Claims of the Asserted Patents.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1932-34 (2016); *Greatbatch Ltd. v. AVX Corp.*, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016).

### ii.   Invalidity

128.   Whether Mediacom can prove by clear and convincing evidence that the Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.   *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

129.   Whether Mediacom can prove by clear and convincing evidence that the Asserted Claims are invalid as obvious under 35 U.S.C. § 103.   *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007).

### iii.   Other Defenses

130.   Whether Sprint is barred from enforcing its rights to the Asserted Patents due to equitable estoppel.   A patent infringement suit is barred due to equitable estoppel if the following three elements are established: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.   *High Point SARL v. Spring Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016).

131.   Whether Mediacom had an implied license to Sprint's Asserted Patents.   *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997).   "[A]n implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention."   *Id*.   A license can be implied based on the entire course of conduct between the parties.   *Id.* at 1580, 1582-83.   An implied license does not have to be signed or in writing. Rather, an implied license arises and is valid because of certain conduct of the parties.   *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927).   No formal granting of a license is necessary in order to give it effect.   *Id.*

30

132.    Whether Sprint is barred from enforcing its rights to the Asserted Patents because it failed to disclose the Asserted Patents to a relevant standard setting organization. A participant in a standards-setting organization may waive its right to assert infringement claims against products that practice the standard by "conduct [which] was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365-66 (Fed. Cir. 2018). "Such conduct can be shown where (1) the patentee had a duty of disclosure to the standard setting organization, and (2) the patentee breached that duty." *Id*.

iv.   **Damages**

133.    Whether Sprint is entitled to a reasonable royalty should the jury find that an Asserted Claim is valid and infringed, either based on a hypothetical negotiation or analytical approach.

134.    Whether Sprint is entitled to a reasonable royalty should the jury find that an Asserted Claim is valid and infringed, either based on a hypothetical negotiation or analytical approach, for those sales that are not included in the lost profits calculation.

135.    Whether Mediacom has proved the existence of non-infringing alternatives to the technology of the Asserted Patents.   The availability of a non-infringing alternative places downward pressure on the reasonable royalty.   *Zygo Corp. v. Wyko Corp*., 79 F.3d 1563, 1571-72 (Fed. Cir. 1996); *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1393-94 (Fed. Cir. 2003).

136.    Whether Sprint is entitled to lost profits should the jury find that an Asserted Claim is valid and infringed.   Lost profits damages are available to the patentee if there is "a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." *Crystal Semiconductor Corp. v. Tri-Tech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed.

Cir. 2001). One way for a patentee to prove entitlement to lost profits is the so-called *Panduit* four-factor test. *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1549 (Fed. Cir. 1995), cert. denied, 516 U.S. 867 (1995) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F. 2d 1152, 1156 (6th Cir. 1978)). The four *Panduit* factors are: (i) demand for the patented product; (ii) absence of acceptable non-infringing substitute products; (iii) manufacturing and marketing capability to exploit the demand; and (iv) measurement of the amount of lost profits damages, if any, based on a reasonable degree of economic certainty. *See Panduit*, 575 F.2d at 1156. In order to recover lost profits damages, the patentee must meet all four factors. *Id.*

137. Whether Sprint has properly apportioned its lost profits damages claim. According to the Federal Circuit, apportionment is necessary for a lost profits analysis "[i]f the application of the Panduit factors does not result in the separation of profits attributable to the patented device and the profits attributable to providing other aspects." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019); *see also Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287–88 (Fed. Cir. 2017) (holding that "satisfaction of the Panduit factors satisifie[d] principles of apportionment" where, "on the undisputed facts of this record," it was clear the plaintiff's damages were "tied to the worth of its patented features"); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, C.A. No. 17-1390-LPS-CJB, D.I. 445, at 13-14 (D. Del. Jan. 13, 2020) (excluding lost profits opinions where expert "never engage[d] in an apportionment analysis in which he assesses the ***value of the patents in relation to the other many aspects of the butane supply agreements*** on which his damages calculation rates are based" (emphasis in original)).

138. Whether Sprint is entitled to any enhanced damages under 35 U.S.C. § 284 should the jury find that an Asserted Claim is valid and infringed. "The subjective willfulness of a patent

infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Georgetown Rail Equip. Co. v. Holland L.P.,* 867 F.3d 1229, 1244 (Fed. Cir. 2017). But "[c]onsistent with nearly two centuries of enhanced damages under patent law, . . . such punishment should generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1933 (2016). *"*Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. at 1932 (citations omitted).

139.    Whether Sprint is entitled to prejudgment interest for any award of damages. *See* 35 U.S.C. § 284.

## VI.   EXHIBITS TO BE OFFERED AT TRIAL

140.    Sprint's exhibit list, and Mediacom's objections thereto, is submitted as **Exhibit A** to this Proposed Pretrial Order. Sprint's exhibits are identified by number prefixed with "PTX." Sprint reserves the right to offer at trial any exhibit Mediacom lists on its exhibit list.

141.    Mediacom's exhibit list, and Sprint's objections thereto, is submitted as **Exhibit B** to this Proposed Pretrial Order. Mediacom's exhibits are identified by number prefixed with "DTX." Mediacom reserves the right to offer at trial any exhibit Sprint lists on its exhibit list.

4889-2232-9394 v2

142.     The parties will exchange final exhibit lists on Form AO187 by 6 p.m.[5] 3 calendar days before the first day of trial (*e.g.*, Friday for a trial scheduled to start Monday).  These lists include the exhibit number to be used at trial and a description sufficient to identify the exhibit, *e.g.*, by production number, deposition exhibit number, or otherwise.  No party may add to its final exhibit list any exhibit not identified in **Exhibits A** or **B** of this Order without agreement of the parties or seeking leave of the Court. A party may not use any exhibit that does not appear in its final exhibit list or **Exhibits A or B** of this Order, except for impeachment or refreshment purposes.

143.     On or before the first day of the trial, each party will deliver to the Courtroom Deputy a completed Form AO187 with its respective exhibit and witness list.

144.     The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

145.     Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all objections that may arise by virtue of the change in the identity of the party sponsoring the exhibit.  If such evidentiary objections are overruled, any such exhibit may be admitted into evidence.  Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

146.     Each party reserves the right to use exhibits <u>not</u> set forth in its exhibit list for purposes of impeachment or refreshment.

---

[5] All times set forth herein are in Eastern Daylight Time (EDT).

147.    No exhibits shall be deemed admitted in evidence automatically.  The parties may request that the Court "pre-clear" exhibits by ruling on any objections in advance of the first day of trial, but "pre-cleared" exhibits shall not be deemed automatically admitted into evidence. Exhibits to which no objection has been made during the parties' exchange of objections to exhibits, and exhibits that have been "pre-cleared" by the Court, may be used by any party at any point during the trial, and shall be admitted if expressly referenced (by trial exhibit number) before the jury and entered into evidence by the Court.

148.    The parties agree that any exhibit identified in both **Exhibit A** and **Exhibit B** to this Order for which no objection has been asserted during the parties' previous exchange of objections to exhibits or that has been "pre-cleared" or ruled admissible by the Court may be used and published to the jury in opening statements by either party.

149.    The parties agree that documents created and produced by a party or subpoenaed third party and thereafter produced by that party or subpoenaed third party during the discovery phase of this litigation, and identified in both **Exhibit A** and **Exhibit B** to this Order, are presumed prima facie genuine and authentic.  For avoidance of doubt, nothing in this provision shall apply to documents that were produced by Mediacom, Sprint, or Metaswitch, or any subpoenaed third party, that were not created by the producing party (i.e., Mediacom, Sprint, Metaswitch, or the subpoenaed third party).

150.    The parties agree that documents created by a party (i.e., Mediacom, Sprint, or Metaswitch) are presumed to be records kept in the course of the regularly conducted activity of a business pursuant to Federal Rule of Evidence 803(6)(B). However, nothing shall prohibit a party from offering argument or evidence to rebut these presumptions, or from otherwise seeking admittance of any documents or communications for purposes other than the truth of the stated

matters.  For avoidance of doubt, nothing in this provision shall apply to documents that were produced by Mediacom, Sprint, or Metaswitch that were not created by the producing party (i.e., Mediacom, Sprint, or Metaswitch).

151.    Each party shall make available for inspection any physical exhibits no later than 7 calendar days before the first day of trial (*e.g.,* by Monday for a trial scheduled to start the following Monday), or on a mutually agreeable date.  On the same date, each party shall also provide, electronically, copies of any such proposed physical exhibits, to the extent practicable. To the extent physical exhibits are to be offered, neither party waives any rights to object to the admissibility by virtue of this protocol.

152.    The parties agree that the demonstrative exhibits the parties intend to use at trial do not need to be included on their respective lists of trial exhibits to this order.

## VII.    EXCHANGES OF DEMONSTRATIVES AND EXHIBITS DURING TRIAL

153.    **[Sprint's Position]** Sprint contends that demonstratives containing the testimony of a witness, an image of a witness, and/ or copies of exhibits need not be disclosed, prior to their use in opening statements or with a witness.

154.    **[Mediacom's Position]** Mediacom disagrees with Sprint's position.  Mediacom contends that any demonstratives should be disclosed prior to their use in opening statements or with a witness as set forth below so that the parties may verify that the demonstratives do not contain any objectionable testimony of a witness or exhibits.

### A.    Exchange of Demonstratives and Exhibits to be Used in Opening Statements

155.    By 6:00 pm on the day before the first day of trial  (*e.g.,* Tuesday 6 p.m. for a trial that starts on Wednesday), each party will identify the exhibits that it intends to use for opening statements and provide color copies of demonstratives to be used with opening statements in PDF

form.  For any video or animations to be used, the party seeking to use the video or animations will provide such demonstratives in an electronic form that enables the receiving party to play the video or animation as it is intended to be used in court.

156.    By 8:00 pm, each party will identify any objections to the exhibits and the demonstratives of the opposing party.

157.    The parties shall meet and confer on any objections by 9:00 pm that evening.

158.    In the event that the parties do not resolve their dispute, the objecting party will request that the Court address the objections prior to jury selection (or at the Court's convenience).

**B.      Exchange of Demonstratives and Exhibits to be Used with Witnesses During Trial**

159.    By 7:00 pm one day before the day on which a party intends to call a witness on direct examination, the party offering the witness will provide the opposing party with:

a)  the exhibits that the party intends to use on direct examination with those non-adverse witnesses whom they intend to call in person to testify, and for deposition witness, the exhibits the party intends to introduce through deposition testimony. Pursuant to this paragraph, the identification of an exhibit as intended to be used amounts to counsel's good faith certification that the exhibit will, in fact, be used with that witness.

b)  color copies of all demonstratives to be used during direct examination of the non-adverse witnesses whom the party intends to call in person in the form they will be used at trial.  Exchanged demonstrative exhibits must represent fully the form in which the demonstrative exhibits will be used, including color content.  For any video or animations to be used, the party seeking to use the video or animations will provide such demonstratives in an electronic form that enables the receiving party to play the

37

video or animation as it is intended to be used in court.  For any physical exhibits to be used, the party seeking to use the exhibit must make it available for inspection, assuming the requirements of paragraph 128 have also been satisfied.

c)  Further, the parties agree they need not disclose exhibits or demonstratives to be used in examining an adverse witness.

d)  The parties need not identify exhibits or demonstratives for use in cross examination.

160.    By 8:00 pm the evening before a witness is put on the stand, the opposing party will identify any objections to the exhibits and the demonstratives.

161.    The parties shall meet and confer on any objections by 9:00 pm that evening.

162.    In the event that the parties do not resolve their disputes, the objecting party will request the Court to address the objection at some time prior to the start of the trial day on which the witness will be called.

163.    The notice provisions in this section do not apply to demonstrative exhibits created in real-time during examination of a witness, or to the enlargement, highlighting, ballooning, or excerpting of trial exhibits or testimony by attorneys or by the witness, so long as the party has properly identified its intent to use the exhibit with that witness in accordance with the procedures identified above.

## C.    Exchange of Demonstratives and Exhibits to be Used During Closing Arguments

164.    The parties agree that, for closing arguments, a party need not provide advance notice regarding its intent to use demonstratives previously used during the course of trial.  The parties shall exchange any previously unused demonstratives to be used in closing arguments by 7:00 PM on the day before closing arguments.

165.    If a party objects to a previously unused demonstrative, the objecting party must disclose that objection by 9:00 PM on the day before closing arguments.

166.    In the event that the parties do not resolve their dispute, the objecting party will request that the Court address the objections before the start of closing arguments (or at the Court's convenience).

## VIII.   WITNESSES TO BE CALLED AT TRIAL[6]

### A.    Plaintiff Sprint

167.    Sprint identifies the following list of witnesses that it expects to call at trial in its case-in-chief.  Sprint reserves the right to modify this list.  Sprint further incorporates by reference and reserves the right to call all witnesses Mediacom lists on its witness list.  Sprint also reserves the right to call witnesses to authenticate documents and rebuttal witnesses or impeachment witnesses as may be necessary.

| Witness | Live or by Deposition |
|---|---|
| **WILL CALL** | |
| Wicker, Stephen | Live |
| Mangum, Russell | Live |
| Herman, Michele | Live |
| Ball, Harley | Live or by deposition |
| Kalinoski, Scott | Live or by deposition |
| Talley, Michael | Live or by deposition |
| Chall, Mark | Live or by deposition |
| Wiley, William | Live or by deposition |
| Capobianco, Joseph | Live or by deposition |
| DuRee, Al | Live or by deposition |
| Gardner, Michael Joseph | Live or by deposition |
| Setter, Michael | Live or by deposition |
| Templin, Dan | Live or by deposition |
| Walden, JR | Live or by deposition |

---

[6] The parties currently anticipate that live witnesses will appear in person.  However, given uncertainty around travel restrictions and the pandemic, the parties will discuss if the need for a witness to appear virtually should arise.

| | |
|---|---|
| McNaughton, Dave | Live or by deposition |
| Stephan, Mark | Live or by deposition |
| Pascarelli, John | Live or by deposition |
| Walsh, Brian | Live or by deposition |
| MAY CALL | |
| Cordes, Michael | Live or by deposition |
| Glass, Greg | Live or by deposition |
| Greig, Andrew | Live or by deposition |
| O'Brien, Tracy | Live or by deposition |
| Patterson, James | Live or by deposition |
| Thornburg, Timothy | Live or by deposition |
| Esrey Jr., Bill | Live or by deposition |
| Moore, Tom | Live or by deposition |
| Craib, Calvin | Live or by deposition |
| Flanagan, John | Live or by deposition |
| Whitehouse, Dan | Live or by deposition |
| Lambert, Jerold | Live or by deposition |
| Hubbard, Nigel | By deposition |
| Choi, Zenas | By deposition |
| Wolfe, Cortland | By deposition |

**B.     Defendant Mediacom**

168.    Mediacom identifies the following list of witnesses that it expects to call at trial in its case-in-chief.  Mediacom reserves the right to modify this list.  Mediacom further incorporates by reference and reserves the right to call all witnesses Sprint lists on its witness list.  Mediacom also reserves the right to call witnesses to authenticate documents and rebuttal witnesses or impeachment witnesses as may be necessary.

| Witness | Live or Deposition |
|---|---|
| WILL CALL | |
| Pascarelli, John | Live |
| Templin, Dan | Live |
| Bakewell, Chris | Live |
| Bradner, Scott | Live |
| Gilchrist, Seamus | Live |
| MAY CALL | |
| Craib, Calvin | Live or by deposition |
| Lambert, Jerold | Live or by deposition |
| McNaughton, Dave | Live or by deposition |
| Stephan, Mark | Live or by deposition |

| | |
|---|---|
| Walden Jr., Glenn ("JR") | Live or by deposition |
| Walsh, Brian | Live or by deposition |
| Flanagan, John | Live or by deposition |
| Whitehouse, Dan | Live or by deposition |
| Baran, Dave | By deposition |
| Ball, Harley | Live or by deposition |
| Capobianco, Joseph | Live or by deposition |
| Chall, Mark | Live or by deposition |
| Cordes, Michael | Live or by deposition |
| DuRee, Al | Live or by deposition |
| Esrey Jr., Bill | Live or by deposition |
| Gallagher, William | By deposition |
| Gardner, Michael Joseph | Live or by deposition |
| Glass, Greg | Live or by deposition |
| Greig, Andrew | Live or by deposition |
| Kalinoski, Scott | Live or by deposition |
| Lipford, Mark | Live or by deposition |
| Logan, Michael | Live or by deposition |
| Manning, Serge | Live or by deposition |
| Moore, Tom | Live or by deposition |
| Nelson, Tracy | Live or by deposition |
| O'Brien, Tracy | Live or by deposition |
| Patterson, James | Live or by deposition |
| Setter, Michael | Live or by deposition |
| Shriver, Douglas | By deposition |
| Smith, Mike | Live or by deposition |
| Talley, Michael | Live or by deposition |
| Thornburg, Timothy | Live or by deposition |
| Vos, Benjamin | Live or by deposition |
| Wiley, William | Live or by deposition |

### C.    Designation of Testimony by Deposition

169.    For those witnesses who may be called to testify by deposition, the parties have designated specific page and line numbers of deposition testimony that they intend to read or play back during their case-in-chief.

170.    The parties' proposed list of designations, counter designations, and rebuttal designations of deposition testimony for issues on which each party has the burden of proof, and objections thereto, are attached hereto as **Exhibit C** (designations for witnesses Sprint intends to

41

call by deposition), and **Exhibit D** (designations for witnesses Mediacom intends to call by deposition).

171.     This pretrial order contains the maximum universe of deposition designations, counter designations, and rebuttal designations of deposition testimony, and objections thereto. None of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown, or unless exclusively for rebuttal or impeachment.

## IX.     IDENTIFICATION OF ORDER OF WITNESSES AS TRIAL PROGRESSES

172.     Each party will identify all live trial witnesses in the order that the party expects to call them by 6:00 pm three calendar days before the witness will be called to testify live (*e.g.*, notice must be given by 6:00 pm on Sunday for witnesses to be called on Wednesday).

173.     A party shall provide reasonable notice if for any reason it does not intend to call a witness that it had previously indicated would appear live as a "will call" witness.  In that event, the other party may designate and offer deposition testimony from such witness (subject to the Federal Rules of Evidence).   Counter-designations, and counter-counter designations of such deposition testimony may also be provided.   In the event that such designations cannot be completed by the times agreed to below, the parties shall work in good faith to set deadlines for the disclosure of such designations, counter-designations, counter-counter designations, and objections therof.

174.     Sprint may recall Dr. Wicker, and/or other expert or fact witnesses called during its case-in-chief, again during its rebuttal presentation, but solely for the purpose of rebutting evidence and testimony presented in Mediacom's case-in-chief (*i.e.,* solely on issues on which Mediacom bears the burden of proof).

## X.     USE OF DEPOSITION TESTIMONY AT TRIAL AND EXCHANGES  OF DEPOSITION DESIGNATIONS DURING TRIAL

175.    Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections that may arise by virtue of the change in the identity of the party sponsoring the testimony.

176.    The parties may offer some or all of the deposition testimony set forth in **Exhibits C** and **D** at trial. A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

177.    If a party designates deposition testimony, and the other party counter-designates, then the designations, counter-designations, and counter-counter designations (if any) will be played/read together with the original designations in the order that the witness provided the testimony.  The time available for each party's trial presentation shall be reduced by the length of its designations, counter-designations, and counter-counter designation for each deposition played/read.[7]

178.    The party offering the witness will prepare the video clips to be played, or transcript to be read, presenting all portions of the designated testimony in sequence.  To that end, the following procedure will apply.

179.    By 6:00 pm three calendar days before a witness is put on the stand by deposition (*e.g.,* Sunday evening for a Wednesday witness), the party offering the witness will identify those portions of the transcript designations that will be presented to the jury.

---

[7] If both Sprint and Mediacom affirmatively designate the deposition testimony of a fact witness, that witness may be called via deposition twice during the case.  During Sprint's case-in-chief, Sprint's designations and any counters and counter-counters thereto will be played.  During Mediacom's adverse case-in-chief, Mediacom's designations and any counter and counter-counters thereto will be played.

4889-2232-9394 v2

180.     By 6:00 pm two calendar days before the witness is put on the stand (i.e., Monday for a Wednesday witness) by deposition the responsive party will identify any objections to the designated testimony and counter-designations that will be presented to the jury . The counter-designations shall include page and line desigations from the transcript of the deposition and a report showing the order in which the excerpts will be presented at trial.

181.     By 7:30 pm two calendar days before the witness is put on the stand by deposition, the party offering the witness will identify any counter-counter designations and objections to the counter designations. The counter-counter designations shall include page and line designations from the transcript of the deposition and a report showing the order in which the excerpts will be presented at trial.

182.     By 8:30 pm two calendar days before the witness is put on the stand by deposition, the responsive party will notify the offering party of any objections to the counter-counter designations.

183.     The Parties shall meet and confer on any objections by 9:00 pm two calendar days before the witness is put on the stand by deposition.  In the event that the parties do not resolve their disputes, the objecting party will request the Court to address the objections by at least one 12:00 pm the day before the day on which the deposition testimony will be offered, at the Court's discretion. Prior to the presentation of any such issues to the Court, the party offering the witness shall submit highlighted copies of the disputed materials (with each side's designated testimony highlighted in a different color) and an itemized list of the remaining objections to the Court.

184.     By 6:00 pm the evening before the witness is put on the stand by deposition (*e.g.,* Tuesday for a Wednesday witness), the party offering the witness will provide a workable copy of the actual video to be played, or transcript to be read, containing all parties' designations,

consistent with any objections resolved by the Court. All irrelevant and redundant material, including colloquy between counsel, objections, and pauses, will be eliminated when the deposition is played/read at trial, to the extent feasible.

185.    The identification of deposition testimony (initial, counter-designation, and counter-counter designation) amounts to counsel's good faith certification that the testimony will, in fact, be played / read. However, the parties reserve the right to seek consent or permission to make minor adjustments to their deposition designations based on the testimony and evidence presented at trial. The parties agree to meet and confer on an as-needed basis if and when a party believes it needs to make changes to the previously disclosed designations on the basis of such testimony and evidence.

186.    Prior to the introduction of deposition designations or counter-designations, counsel for the introducing party may provide a short introduction to the jury about the identity of the witness and general subject matter of deposition testimony, which introduction the parties agree is not evidence and the time for which will be charged against that party.

187.    Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

## XI.    OTHER AGREEMENTS REGARDING EXCHANGES AND MEET AND CONFERS

188.    The exchange procedures herein shall not apply to evidence or prior testimony used for impeachment or cross-examination of adverse witnesses. However, any deposition testimony read or played for impeachment purposes shall be modified to include any corrections in the errata sheets.

45

189.     To the extent progress during a trial day affects any of the foregoing events and/or exchanges (e.g., when a witness will be called at trial), any prior notice regarding any such events and/or exchanges shall be updated or supplemented by 7:00 PM of that trial day.

## XII.    STATEMENTS OF INTENDED PROOF

### A.    Sprint's Statement

190.     Sprint respectfully submits its statement of intended proof as to what it expects to prove in support of its claims, including for its claims for relief.  Sprint's statement is limited to its expected proof with regard to its claims, and does not address the proof that it may choose to present in response to the defenses for which Sprint has the burden of proof and may present evidence at trial.  Sprint's  statement is based on the current status of the case and the Court's current rulings.  Sprint reserves the right to revise this statement in light of further decisions or orders of the Court, including without limitation any rulings on pending motions.

191.     During trial in this matter, Sprint intends to establish that the Accused Services infringed each of the Asserted Claims of the Asserted Patents.  Sprint intends to establish that this infringement was willful.

192.     Sprint intends to establish that it is entitled to damages from Mediacom for its unauthorized use of the methods claimed in the Asserted Claims of the Asserted Patents, including pre- and post-judgement interest and costs, in an amount to be determined.  Sprint intends to establish that it is entitled to a trebled damages award and attorneys' fees.

### B.    Mediacom's Statement

193.     Mediacom intends to establish that the Accused Services do not infringe any of the Asserted Claims of the Asserted Patents.  Should the jury find that the Accused Services infringe

any of the Asserted Claims, Mediacom intends to establish that the infringement was not willful and that Sprint is not entitled to the damages it seeks.

194.    Mediacom intends to establish that the Asserted Claims of the Asserted Patents are invalid as anticipated under 35 U.S.C. § 102 and as obvious under 35 U.S.C. § 103.

195.    Mediacom intends to establish that Sprint is barred from enforcing the Asserted Patents based on equitable estoppel and/or an implied license.

## XIII.  AMENDMENT OF THE PLEADINGS

196.    The parties do not propose any amendments to the current pleadings.

## XIV.  CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS

197.    The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement, including mediation.   The parties, through their respective counsel, have considered the possibility of settlement.  It was determined that the matter could not be resolved at this juncture by settlement.

## XV.  OTHER MATTERS

### A.    Mediacom's Request to Submit Its Defenses to the Jury

198.    **[Mediacom's Position]** Mediacom contends that implied license ought to be tried to the jury.  Although a question of law, courts have commonly sent implied license defenses to the jury to decide.  *See, e.g.*, *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) ("[W]e agree with the district court that the factual findings support ***the jury's legal conclusion*** on the implied license defense . . . ." (emphasis added)).  This Court has recently done the same.  *See IBM Corp. v. Groupon, Inc.*, No. 1:16-cv-122-LPS (D. Del. July 25, 2018), D.I. 386 (final jury instructions), Instruction 4.5, at 30 ("Implied License"); *Groupon*, D.I. 398 (judgment following jury verdict) (adopting the jury's decision on implied license).

199.    Mediacom contends that equitable estoppel ought to be tried to the jury if Sprint's claim

for willful infringement is tried to the jury, and the Court may consider the jury's opinion as an advisory opinion.  As evidenced by the parties' summary judgment briefing, there is a substantial overlap in the evidence relevant to Sprint's willful infringement claim and Mediacom's equitable defense. *See* D.I. 311 (Mediacom's Motion for Summary Judgment of No Willful Infringement), D.I. 309 (Sprint's Motion for Partial Summary Judgment regarding Equitable Issues), D.I. 359 (Sprint's Opposition to Motion for Summary Judgment of No Willful Infringement), D.I. 350 (Mediacom's Opposition to Motion for Partial Summary Judgment Regarding Equitable Issues). For example, at least Mr. Calvin Craib, Mr. Dan Templin and Mr. John Pascarelli will testify regarding communications between Sprint and Mediacom regarding their many business relationships, including Sprint's contractual agreement not to assert Asserted Patents against Mediacom during the term of the parties' MVNO agreement, and such testimony is relevant to whether Mediacom willfully infringed Sprint's patents and whether Mediacom reasonably believed that Sprint did not intend to assert its patents against Mediacom while the parties were in business together.  As another example, Sprint indicates below that its rebuttal to Mediacom's defense of equitable estoppel will necessarily include evidence of Sprint's prior enforcements that Sprint will also undoubtedly use to support its willful infringement claim.  Contrary to Sprint's position below, Mediacom has moved in limine to preclude Sprint only from introducing evidence of ***the outcomes*** of Sprint's prior enforcements. Should the Court grant Mediacom's motion in limine, Sprint would still be able to otherwise introduce evidence of its prior enforcements to the jury. Thus, presenting all the evidence to the jury at the same time and allowing the jury to weigh the equitable defense at the same time as Sprint's willfulness claim will save the Court's time and resources. Indeed, the Federal Circuit has sanctioned the use of advisory verdicts for equitable defenses many times.  *See*, *e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1009 (Fed.

48

Cir. 2008) (waiver and inequitable conduct submitted to jury for advisory verdict); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003) (equitable estoppel submitted to jury for advisory verdict); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1576 (Fed. Cir. 1997) (equitable estoppel and all other equitable defenses submitted to jury for advisory verdict).

200.    **[Sprint's Position]** Sprint contends that neither Mediacom's implied license defense nor its equitable estoppel defense should be tried to a jury for an advisory verdict, and Mediacom has shown no reason "to burden the jury with an additional, unnecessary decision," let alone two such decisions. *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, No. 15-819-LPS-CJB, 2018 WL 2186677, at *4 (D. Del. May 11, 2018) (citing Fed. R. Civ. P. 39(c)). Implied license and equitable estoppel are both questions of law to be decided by the Court not the jury. *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (en banc), *overruled in part on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 332-33 (2017) ("Equitable estoppel . . . [is] addressed to the sound discretion of the trial court."); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("[T]he existence of an implied license, is a question of law."). Mediacom does not dispute this.

201.    Mediacom provides no reason why the issue of implied license should be submitted to the jury in this case, even if it might have been appropriate in others. For example, in this case, Mediacom's theory of implied license is based in equity and the parties' business relationship. However, Mediacom admittedly never obtained an express license to the asserted patents. *See* D.I. 464 at 2 (granting Sprint's motion for summary judgment of no express license as unopposed). Therefore, admitting evidence or argument that Mediacom has an *implied* license creates an

unnecessary risk of confusing the jury as to its significance and requires the Court to provide careful instructions during trial.[8] *See, e.g., Eastman Kodak Co. v. Sun Microsystems, Inc.*, No. 02-CV-6074T, 2004 U.S. Dist. LEXIS 18244, at *13-14 (W.D.N.Y. Sep. 7, 2004) (noting the need to instruct the jury that certain agreements did not grant an express license in order to avoid confusion). This needlessly complicates trial for both the jury and the court.

202.    Second, the existence of overlapping evidence between Mediacom's defense to willfulness (an issue for the jury) and its affirmative defenses is overstated and does not justify submitting those affirmative defenses to the jury. In particular, Mediacom intends to introduce testimony for its implied license and equitable estoppel defenses that will require Sprint to respond with evidence to rebut allegations of delay and reliance.  Such evidence will necessarily include that Sprint was actively enforcing the Asserted Patents in multiple other litigations after Mediacom was provided with notice in 2007 of Sprint's intention to enforce its patents against all unauthorized use.  But Mediacom has separately moved in limine to preclude Sprint from introducing such evidence of its prior enforcements.  To the extent Mediacom is allowed to try its equitable defenses to the jury for an advisory verdict, then the jury must be allowed to hear a full record on Sprint's enforcement efforts and Mediacom's awareness of the same.  Additionally, Sprint would be required to introduce non-overlapping evidence and argument to rebut Mediacom's contention that it relied on Sprint's conduct or silence and that Mediacom was materially prejudiced from any such reliance. Not only would this require additional trial time, introducing equitable issues to the jury "risks contaminating the jury's consideration of infringement and validity and would likely result

---

[8] The potential confusion over an implied license is further heightened by Mediacom's suggestion that Sprint entered into a "contractual agreement not to assert the Asserted Patents against Mediacom."  The conditions of that offer of compromise were never satisfied (D.I. 464 at 2), and Sprint has separately moved to exclude the $5 million release offer under Rules 408 and 403.

in more time during the jury phase of the trial discussing limiting instructions." *In re Biogen '755 Patent Litig.*, No. CV102734CCCJBC, 2018 WL 3613162, at *4 (D.N.J. July 26, 2018) (rejecting advisory verdict request on inequitable conduct defense); *see also Integra LifeSciences Corp.*, 2018 WL 2186677, at *4 (denying Defendant's request for advisory jury verdict on equitable estoppel "not to burden the jury with an additional, unnecessary decision"). To avoid prejudice to Sprint and avoid wasting additional trial time on issues for the Court to decide, the more prudent approach is to supplement the record for a bench trial with non-overlapping evidence. *See Endo Pharm. Inc. v. Amneal Pharm., LLC*, 224 F. Supp. 3d 368, 387 (D. Del. 2016); *see also TruePosition Inc. v. Andrew Corp.*, No. 05-747, 2008 U.S. Dist. LEXIS 4981, at *2-4 (D. Del. Jan. 23, 2008) (describing procedure for deciding equitable defenses on the trial record with post-trial briefing); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civil Action No. 09-290, 2012 U.S. Dist. LEXIS 193822, at *8-10 (W.D. Pa. Nov. 28, 2012) (denying request for advisory verdict and deferring decision on procedures for supplementing the record).

### B.      Number of Invalidity Arguments

203.      **[Sprint's Position]** The parties stipulated that Sprint would serve a "final election of up to 7 claims for trial" on June 29, 2022 and that Mediacom would serve "updated invalidity references including up to 3 argumementsarguments" on July 13, 2022.  (D.I. 572.)  Sprint contends that, notwithstanding this stipulation and the Court's order, Mediacom relies on ***three patents*** (Baran '164, Bolliger, and Hiller '636), ***twelve documents*** purportedly related to Com21, and ***at least six different arguments*** under §§ 102 and 103 for each of the seven asserted claims. As one example, for claim 16 of the '932 patent, Mediacom has "elected" to present the following invalidity arguments:  "Baran '164/Com21 System (§§ 102, 103), Bolliger §§ 102, 103), Hiller '636 (§§ 102, 103)."  To make matters worse, Mediacom contends that "[e]ach obiviousness

ground also includes the knowledge of a person of ordinary skill in the art as set forth in Mr. Gilchrist's Invalidity Report." Mediacom has further asserted written description and enablement invalidity arguments in its expert reports.[9] Sprint objects to Mediacom's invalidity disclosures as failing to comply with the parties' stipulation and Court order because Mediacom continues to hide the ball as to which three invalidity arguments it will present at trial.

204.    **[Mediacom's Position]** Mediacom disagrees. Mediacom narrowed its invalidity case to the same three references for each Asserted Claim, resulting in fewer invalidity arguments at issue than if Mediacom had chosen to elect three different arguments for each of the seven Asserted Claims as permitted under the parties' stipulation. (D.I. 572.) In doing so, Mediacom not only complied with the parties' stipulation but also significantly narrowed its invalidity case by eliminating three other invalidity references, its written description and enablement arguments, and its subject matter eligibility arguments. Furthermore, the number of documents related to the "Baran '164/Com21 System" that Mediacom reserves the right to rely at trial on is immaterial to Mediacom's election of that system as prior art. Additionally, the inclusion of "the knowledge of a person of ordinary skill in the art as set forth in Mr. Gilchrist's Invalidity Report" in each obviousness ground does not "make matters worse" because it clarifies that Mediacom's obviousness grounds do not rely on any secondary references and is an entirely appropriate consideration for the obviousness inquiry. *See Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1337 (Fed. Cir. Jan. 30, 2020) ("Regardless of the tribunal, the inquiry into whether any 'differences' between the invention and the prior art would have rendered the invention obvious to a skilled artisan necessarily depends on such artisan's knowledge.").

_____

C.       **Length of Trial**

205.      The case is scheduled for a jury trial to begin on April 17, 2023 at 9:30 a.m., with subsequent trial days beginning at 9:30 a.m. and the jury excused each day at 4:30 p.m. (D.I. 27, 126.)  The trial will be timed, and the parties propose that each side be allocated 15 hours in which to present their respective cases to the jury.  Opening statement, direct and redirect examinations of witnesses called (including by designation), cross-examinations of witnesses called by the opposing party (including by designation), and objections in the presence of the jury all count toward each side's trial time.  The Courtroom Deputy will keep a running total of trial time used by counsel.

D.       **Order of Presentation of Evidence to the Jury[10]**

206.      The following order of presentation of evidence will govern the jury trial:

(a)      Opening statements (Sprint, followed by Mediacom);

(b)      Sprint's presentation of evidence for issues on which Sprint bears the burden of proof (e.g., infringement, willfulness, and damages);

(c)      Mediacom's presentation of evidence rebutting Sprint's presentation, and Mediacom's presentation of evidence for issues on which Mediacom bears the burden of proof (i.e., invalidity and other defenses);

(d)      Sprint's presentation of evidence rebutting Mediacom's presentation, including on issues regarding the alleged invalidity of the Asserted Patents;[11]

---

[10] As previously noted, a number of issues will also be tried to the Court.  Those issues are not included in this Order of Presentation of Evidence.

[11] Sprint may call Dr. Wicker, and/or other experts called during its case-in-chief, to the stand again during its rebuttal presentation, but solely for the purposes of rebutting evidence and testimony presented by Mediacom on issues on which Mediacom bears the burden of proof.

(e)    Mediacom proposes that it should be able to present evidence rebutting Sprint's rebuttal presentation for issues on which Mediacom bears the burden of proof (i.e., invalidity and other defenses);[12]

(f)    Closing arguments (Sprint, followed by Mediacom, followed by rebuttal by Sprint).

### E.    Jury Instructions, Verdict Form, and Voir Dire

207.    The parties' proposed preliminary jury instructions, proposed final jury instructions, proposed verdict form, and proposed voir dire shall be separately filed with the Court.

208.    The Court will conduct the initial voir dire of potential jurors.  Thereafter, the parties shall be permitted to conduct additional voir dire.

### F.    Number of Jurors and Jury Procedures

209.    The Parties agree that the current version of the Federal Judicial Center Introduction to the Patent System video (2013) will be played as part of the Court's preliminary jury instructions.

210.    On the first day of trial, each member of the jury shall be provided a binder containing (1) the Asserted Patents, (2) a list of of each Asserted Claim (dependent claims to be shown with the relevant limitations of the independent claim incorporated), (3) the terms/phrases of the Asserted Claims of the Asserted Patents that have been construed, any agreed constructions, and the Court's constructions, (4) a photograph of each witness expected to be called at trial (each photograph on a single page), (5) copies of the prior art; and (6) several blank sheets for notes.

---

[12] **Sprint's footnote:** Sprint objects to Mediacom's proposed rebuttal case. Mediacom has not asserted any counterclaims and its defense should be included with its case-in-chief.  Mediacom will have an opportunity to cross-examine Sprint's witnesses in the ordinary course of the proceedings. If Mediacom is permitted to have a rebuttal case, then Sprint should be permitted to put on a sur-rebuttal case, if needed.

211.    The Parties agree that jurors be permitted to write notes by hand in their provided binders during the trial, and that the jurors be permitted to bring their provided binders into the deliberation room.

### G.    Currently Pending Motions

212.    None.

## XVI.    OTHER STIPULATIONS

213.    The parties agree to approach the Court in advance of any questioning that would invoke the attorney-client privilege or involve the use of a privilege log.

214.    The parties agree not to introduce evidence or argument regarding either parties total revenues or profits.  This agreement does not address whether Sprint may put on evidence or argument of Mediacom's total VoIP revenues or profits.

215.    The parties agree not reference any motions, motion practice, orders on motions, or opinions of the Court in this case, excluding the Claim Construction Order (D.I. 220), but reserve all rights to seek instructions to the jury by the Court related to its orders or opinions in this case.

216.    The parties agree not introduce evidence or argument regarding personal facts about Joe Christie or the circumstances of his death; however, Sprint may offer evidence or argument (a) concerning Mr. Christie's inventions related specifically to the Asserted Patents (consistent with the scope of evidence and testimony allowed by Judge Lungstrum in the prior TWC trial), (b) regarding Mr. Christie's role at Sprint, including the team he was on; and (c) that he passed away while still employed by Sprint.

217.    The parties agree to not introduce any testimony that goes beyond personal knowledge of Com21, from either David Baran or William Gallagher.

## XVII.  ORDER TO CONTROL COURSE OF ACTION

218.     This order shall control the subsequent course of the action, unless modified by the

Court to prevent manifest injustice.

219.     The Parties may seek leave to supplement or amend this Proposed Pretrial Order

based on subsequent events or by agreement.

POLSINELLI PC

/s/ Stephen J. Kraftschik
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

Of Counsel:

B. Trent Webb
John D. Garretson
Aaron E. Hankel
Ryan J Schletzbaum
Ryan D. Dykal
Jordan T. Bergsten
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
sprintteam@shb.com

Robert H. Reckers
Michael W. Gray
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002-2926

ASHBY & GEDDES

/s/ Andrew C. Mayo
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Of Counsel:

G. Hopkins Guy, III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
(650) 739-7500

Roger Fulghum
Robinson Vu
Natalie Alfaro Gonzales
Lindsay Volpenhein Cutie
Amy E. Bergeron
Charles Stephen Maule
Lori Ding
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1234
DLBBMediacom-

56

(713) 227-8008                          SprintCases@BakerBotts.com
sprintteam@shb.com

*Attorneys for Plaintiff Sprint*          *Attorneys for Mediacom Communications*
*Communications Company L.P.*             *Corp.*

September 28, 2022