IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 17-1736 (RGA)<br>) |
| MEDIACOM COMMUNICATIONS CORP., | ) **REDACTED**<br>) **PUBLIC VERSION** |
| Defendant. | ) |

**SPRINT'S MOTION *IN LIMINE* I AND ASSOCIATED BRIEFING:
MOTION TO EXCLUDE** REDACTED **CONTRACT TERM
THAT WAS PART OF AN UNREALIZED CONTINGENT OFFER OF COMPROMISE**

OF COUNSEL:

B. Trent Webb
Ryan J. Schletzbaum
Ryan D. Dykal
John D. Garretson
Jordan T. Bergsten
Aaron E. Hankel
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
Thomas M. Patton
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
Michael W. Gray
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

POLSINELLI PC
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Sprint Communications Company L.P.*

Original Filing Date: September 28, 2022
Redacted Filing Date: October 6, 2022

85342101.1

I.     **MOTION TO EXCLUDE** REDACTED     **CONTRACT TERM THAT WAS PART OF AN UNREALIZED CONTINGENT OFFER OF COMPROMISE**

In 2012, Sprint attempted to compromise these very claims by offering Mediacom a prospective release from this litigation if it signed a wireless agreement with Sprint and purchased at least REDACTED of services thereunder. (Ex. A, MVNO Agreement, Section 16.). Mediacom signed the deal but then did not follow through on its REDACTED purchase commitment; thus, no release was granted. (17-1736, D.I. 464, p. 4.). REDACTED

This is inadmissible for two reasons. First, Sprint's compromise offer is inadmissible under FRE 408 to prove the "amount of a disputed claim." Second, this unrealized license should be excluded for fairness's sake under FRE 403 since the Court already has excluded Sprint's actual (and more substantial) licenses covering the asserted patents, with companies facing similar litigation threats as Mediacom. (17-1736, D.I. 469 at 17-22.).[1]

Under FRE 408, any reference to the REDACTED revenue threshold in the 2012 agreement should be excluded because it was a conditional offer to compromise that Mediacom never fulfilled. From 2004 to 2010, Mediacom used Sprint to connect its wireline VoIP traffic to and from the PSTN. (Ex. C, Templin Tr, at 51:3-5). In 2010, Mediacom elected to transition its services in-house. (*Id.* at 52:9-14). Knowing that Sprint had enforced its VoIP patent portfolio in several prior patent litigations, Mediacom REDACTED

In 2012, the parties were negotiating

---

[1] While Sprint respectfully disagrees with the Court's decision, it recognizes the Court's ruling is now law of the case and asks that it be applied consistently to prevent Mediacom from presenting an incomplete and misleading picture of Sprint's licensing practices.

1

a separate business deal that would involve Mediacom selling a re-branded, Sprint wireless telephone service to Mediacom's customers. Mediacom's concern over potential liability for infringing Sprint's patents was ultimately addressed by adding a contingent offer of compromise in Section 16 of the parties' Master Wireless Wholesale Services ("MVNO") Agreement. That provision included REDACTED

provided that Mediacom REDACTED

(Ex. A, DTX1004, at Section 16). It is the law of this case that Mediacom did not meet this revenue threshold. (17-1736, D.I. 464, p. 4).

Offers of settlement and related negotiations are inadmissible to prove or disprove the validity or amount of a disputed claim, and "when in doubt, the district court, should err on the side of excluding compromise negotiations." *ECEM European Chem. Marketing B.V. v. Purolite Co.*, 451 Fed. App'x 73, 77 (3d Cir. 2011). In *ECEM*, the defendant withheld payment to the plaintiff to offset losses defendant experienced due to late shipments. The Third Circuit followed well-settled precedent that Rule 408 applies to exclude evidence of the parties' compromise negotiations because "there [was] a dispute between parties, or at least an apparent difference of view . . . concerning the validity or amount of [the] claim." *ECEM*, 451 Fed. App'x at 77 (quoting *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 525 (3d Cir. 1995)).

The same reasoning applies here. In this case, it is undisputable that Mediacom: (1) knew about Sprint's VoIP litigations; (2) was aware of and concerned about the risk associated with providing VoIP services without a license to Sprint's patents;[2] (3) knew that Sprint had initiated additional lawsuits against other cable companies; and (4) negotiated and sought a release from "alleged infringement" liability according to the revenue threshold requirement in Section 16. (Ex.

---

[2] REDACTED

A, DTX1004, at Section 16.) The language in Section 16 of the MVNO Agreement[3] was also the result of compromise negotiations—not a valuation of Sprint's VoIP patent portfolio. Mediacom was not obligated to pay the REDACTED: it was a contingent offer that set a revenue threshold that Mediacom had to meet in order to obtain a release from Sprint enforcing the full value of its patent rights. This is the very sort of comprise offer that Rule 408 was designed to exclude, and this evidence should be deemed inadmissible in this case. *See ECEM*, 451 Fed. App'x at 77–78; *see also PharmaStem Therapeutics, Inc. v. Viacell Inc.*, No. 02-148, 2003 WL 22387038, at **3–4 (D. Del. Oct. 7, 2003) (excluding evidence under Rule 408 where the negotiations (1) arose under threat of litigation, (2) arose in a situation where litigation was threatened or probable, or (3) occurred against a backdrop of continuing litigation infringement).

Second, this evidence should be excluded under FRE 403 given this Court's prior holdings regarding Sprint's settlement licenses to the patents-in-suit. To the extent the Court excludes Sprint's executed licenses and the amounts paid under those licenses by other VoIP providers, allowing Mediacom to present evidence of Sprint's REDACTED contingent offer would be unfair, misleading, and contrary to the law and facts of the case.

Sprint has a long history of *not* accepting REDACTED in exchange for licenses to the patents-in-suit, and Sprint has secured hundreds of millions in payments from alleged infringers like Mediacom. Given this history (which Sprint understands will largely by excluded from the upcoming trial), it would be unfairly prejudicial to Sprint for Mediacom to be permitted to argue that the damages in this case should be capped at REDACTED without allowing Sprint to present the full licensing history for these patents. [4]

---

[3]   Sprint reserves the right to refer to other language from the MVNO Agreement, including Section 16, REDACTED that are relevant to other issues, such as Mediacom's willful infringement and Sprint's rebuttal of any allegations of delay in suing.

[4]   Should Mediacom be allowed to introduce the REDACTED Sprint seeks permission to

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br>    *Plaintiff,* <br><br> v. <br><br> MEDIACOM COMMUNICATIONS CORP., <br>    *Defendants* | Case No. 17-1736-RGA <br> CONFIDENTIAL – FILED UNDER SEAL |

## MEDIACOM'S OPPOSITION TO SPRINT'S MOTION IN LIMINE I

**I.**     **REDACTED contract term is relevant to the hypothetical negotiation between the parties and not unduly prejudicial**

Sprint's MIL #1 seeks to exclude evidence of the *actual* negotiation and *executed* agreement wherein Sprint agreed not to sue Mediacom during the term of the agreement and to grant Mediacom a release from any past liability for patent infringement if it paid REDACTED for services under the MVNO Agreement. Ex. A, MVNO Agreement at § 16. The REDACTED is highly relevant and admissible. Contrary to Sprint's assertions, Rule 408 does not apply because there was no actual or even anticipated dispute between the parties—the term was requested by Mediacom and included as part of an executed business arrangement. Moreover, the REDACTED contract term *from the actual negotiation between the parties* is undoubtedly relevant to the hypothetical negotiation between the parties and is not unduly prejudicial.

First, Rule 408 applies only when "an *actual dispute* or a difference of opinion exists." *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527-28 (3d Cir. 1995) (emphasis added). A dispute does not arise when the parties merely discuss licensing a patent or in the context of a non-adversarial business transaction.[1] Here, Mediacom requested the addition of the RE provision during the arms-length negotiation of the parties' MVNO agreement and Sprint agreed. Ex. B, Templin Dep. Tr., 65:20-66:10, 141:3-11; Ex. C, Ball Dep. Tr., 237:11-15, 481:3-8. There was no actual dispute or threat of litigation,[2] and thus, Rule 408 does not apply.

---

[1] *Pioneer Corp. v. Samsung SDI Co.*, C.A. 2:06-cv-00384 (DF), D.I. 411 (E.D. Tex. Oct. 15, 2008) (negotiations and a cross-license agreement between the plaintiff and a third party were part of an "arms-length business transaction" and as such were not "conducted under the threat of litigation and are admissible at trial.").

[2] Contrary to Sprint's assertions, there was not a threat of actual or probable litigation during the MVNO negotiations. *See* Ex. D, SPRIKS_08_000482848 (instructing Sprint employees not to threaten cable partners with infringement claims); Ex. C, Ball Dep. Tr., 424:17-427:8 (discussing need to not threaten any cable partners with infringement). REDACTED

In any event, the jury will be hearing

1

Even if there were a dispute, the [REDACTED] executed agreement between the parties was not an offer of compromise under Rule 408; in similar circumstances courts have found actual agreements are not "compromise negotiations." For example, in *L'Oreal S.A. v. Revlon Consumer Prod. Corp.*, the court declined to exclude what the plaintiff characterized as a settlement agreement between L'Oreal and another party under Rule 408 because the agreement was merely a license "negotiated in a typical commercial setting where a patentee has notified a competitor of its potential infringement." Civ. A. 98-424-SLR, 2008 WL 5868688, at *1 (D. Del. Sept. 30, 2008). This evidence, therefore, was "relevant to the determination of a reasonable royalty." *Id.*[3]

Second, Sprint and Mediacom's actual negotiations and the resulting MVNO agreement is relevant to the hypothetical negotiation and is admissible. Indeed, the "parties' conduct in their actual negotiations is relevant to what their conduct would be in the hypothetical negotiation." *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1368 (D. Del. 1994). Here, the [RE] term is the best evidence of the hypothetical negotiation because it shows how the parties behaved in an actual negotiation at the same time as the alleged first date of infringement regarding Sprint's patent portfolio.

---

significant evidence regarding whether Mediacom believed that Sprint might sue it for patent infringement related to Sprint's willful infringement claims and possibly Mediacom's equitable defenses. Thus, in fairness, the jury should be able to hear about the exact terms of the agreement between the parties.

[3] The cases Sprint relies upon are inapposite. First, the excluded license agreements in *PharmaStem Therapeutics, Inc. v. Viacell Inc.* "arose in a context where litigation was threatened or at least probable." No. C.A. 02–148 GMS, 2003 WL 22387038, at *3 (D. Del. 2003). Likewise, in *ECEM European Chemical Marketing B.V. v. Purolite Co.,* the excluded e-mails were aimed at resolving one party's assertion that the other was contractually obligated to pay for outstanding invoices and thus were classic compromise negotiations and evidence an actual dispute; moreover, there was no actual agreement between the parties. *See* 451 F. App'x 73, 76-77 (3d Cir. 2011). The *ECEM* case is more analogous to the VoIP Settlement Agreement attached to the MVNO Agreement that resolved an actual dispute between Mediacom and Sprint about the amount owed under a separate agreement. *See* Ex. A at SPRIKS_02_00062751. Notably, Sprint has designated deposition testimony regarding this settlement agreement and does not object to it under Rule 408.

Nor is the [REDACTED] term inadmissible under Rule 403. First, this is not a new theory. Rather, Sprint's expert offered rebuttal opinions related to the [REDACTED] agreement, Sprint deposed the fact witnesses who negotiated the term, and Sprint will cross-examine Dr. Bakewell about his opinion at trial. *See* Ex. E, Mangum Reply Damages Rpt. Indeed, Section 16 and [REDACTED] term were admitted ***by Sprint*** in the TWC trial as well. Ex. F, *TWC* Tr. (Feb. 14, 2017) at 414-415. In *In re Biogen '755 Patent Litigation*, the court declined to exclude evidence regarding an agreement between the parties because it was relevant to damages and the probative value "outweigh[ed] the purported prejudice." No. 10-cv-2734, 2018 WL 3613162, at *8 (D.N.J. July 26, 2018). Finally, Sprint's argument that it is prejudiced because the MVNO agreement would be the only agreement that the jury sees is unavailing.[4] The MVNO Agreement is distinguishable from Sprint's excluded licenses—Sprint's own witnesses have argued that Section 16 is not a license at all, but merely a covenant not to sue and agreement for release.[5] Ex. G, Kalinoski Dep. Tr. (5/1/2015), 583:25-584:13; Ex. H, Ball Dep. Tr. (3/12/2015), 697:22-698:13, 812:8-813:24. Indeed, this Court's Order excluding Sprint's expert's reliance on the prior licenses did not include the MVNO agreement. D.I. 469 at 17-22. Sprint also did not move to exclude Dr. Bakewell's reliance upon the [REDACTED] term at the *Daubert* stage. Sprint's eleventh-hour *Daubert* attempt should be denied.

---

[4] While Sprint seeks to exclude only the portion inconvenient to its damages case, it still intends to use Section 16 for other purposes. *See* Sprint's MIL at n.3 ("Sprint reserves the right to refer to other language from the MVNO Agreement, including Section 16…"). Permitting Sprint to do so would be prejudicial to Mediacom.

[5] Notably, Sprint acknowledges that the "Court has already excluded Sprint's actual…licenses covering the asserted patents," yet it refused to agree to Mediacom's MIL requesting exclusion of reference to the outcome (including verdicts and settlement agreements) of Sprint's prior or pending cases, designated deposition testimony about those licenses, and included them on its exhibit list. Thus, it is clear Sprint intends to make every possible end-run around the Court's ruling.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 17-1736 (RGA) ) |
| MEDIACOM COMMUNICATIONS CORP., | ) ) ) |
| Defendant. | ) |

### SPRINT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* I

OF COUNSEL:

B. Trent Webb
Ryan J. Schletzbaum
Ryan D. Dykal
John D. Garretson
Jordan T. Bergsten
Aaron E. Hankel
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
Thomas M. Patton
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
Michael W. Gray
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

September 29, 2022

POLSINELLI PC
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Sprint Communications Company L.P.*

85335910.1

The language of the Sprint/Mediacom 2012 MVNO agreement undermines Mediacom's Rule 408 argument that no "dispute" existed at the time. If (as Mediacom suggests) neither party foresaw this dispute back in 2012, why did Mediacom ask Sprint to promise it would "not file suit" for "alleged infringement of Sprint's Patents," and provide Mediacom a "release" for past "damages"? Ex. A, DTX 1004 at 22. Unlike in Mediacom's authority,[1] these were not two parties negotiating a license without the specter of litigation. Testimony from witnesses on both sides further confirm that the parties disputed the validity and value of the claim at that time.[2] Allowing Mediacom to negotiate a conditional compromise for a known disputed claim, then use that compromise to cap damages in the ensuing suit after failing to meet the conditions, would not only violate Rule 408[3] but also prejudice Sprint and warrant exclusion under Rule 403.

Further as to Rule 403—if Sprint's actual realized licenses covering these patents are excluded, then Mediacom's REDACTED conditional license must also be excluded. As set forth above, Mediacom appreciated the litigation risk it faced if it did not secure a license to these patents, just like Sprint's other licensing partners. It would be extremely prejudicial to Sprint, and would mislead the jury, if this REDACTED unrealized payment is the only licensing evidence in the record, when so many other licensees have paid Sprint hundreds of millions to license these patents. Either all of Sprint's past licensing evidence should be admitted, or none should.

---

[1] *See Pioneer Corp. v. Samsung SDI Co.*, No. 2:06-cv-00384, D.I. 411 (E.D. Tex. Oct. 15, 2008) (admitting renewal negotiations of pre-existing cross license as outside the context of threatened litigation, but excluding negotiations conducted under the threat of litigation); *L'Oreal S.A. v. Revlon Consumer Prod. Corp.*, No. 98-424-SLR, 2008 WL 5868688, at *1 (D. Del. Sept. 30, 2008) (admitting evidence of a standard patent license).
[2] Ex. C, Templin Tr. 69:20-70:4; Ex. K, Ball Tr. 490:17-23, 491:12-16, 493:22-25 (the REDACTED commitment was "absolutely not" the value the patents); Ex. L, Kalinoski Tr. 119:1-11, 548:4-21
[3] *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527-28 (3d Cir. 1995) (applying 408 where there is a "dispute" between parties, or "at least an apparent difference of view . . . concerning the validity or amount of a claim."); *ECEM European Chem. Marketing B.V. v. Purolite Co.*, 451 Fed. App'x 73, 77 (3d Cir. 2011).

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 6, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Steven J. Balick<br>Andrew C. Mayo<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>*Attorneys for Defendant Mediacom*<br>*Communications Corporation* | BY ELECTRONIC MAIL |
| Robinson Vu<br>Natalie Alfaro Gonzales<br>Lindsay Volpenhein Cutie<br>Amy E. Bergeron<br>Charles Stephen Maule<br>Roger Fulghum<br>Lori Ding<br>BAKER BOTTS L.L.P.<br>One Shell Plaza<br>910 Louisiana Street<br>Houston, TX 77002-4995<br>(713) 229-1234<br>*Attorneys for Defendant Mediacom*<br>*Communications Corporation* | BY ELECTRONIC MAIL |
| Timothy S. Durst<br>BAKER BOTTS L.L.P.<br>2001 Ross Avenue, Suite 900<br>Dallas, TX 75201-2980<br>(214) 953-6500<br>*Attorneys for Defendant Mediacom*<br>*Communications Corporation* | BY ELECTRONIC MAIL |

85342101.1

G. Hopkins Guy, III  
BAKER BOTTS L.L.P.  
1001 Page Mill Road  
Building One, Suite 200  
Palo Alto, CA  94304-1007  
(650) 739-7500  
*Attorneys for Defendant Mediacom Communications Corporation*

*BY ELECTRONIC MAIL*

/s/ *Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)